## 77567. STUCKEY et al. v. RICHARDSON et al.
(372 SE2d 458)

CARLEY, Judge.

The instant case concerns the selection of delegates from the State of Georgia to the 1988 National Republican Convention. Appellee-plaintiffs filed a petition for declaratory judgment, seeking a declaration that they were the validly selected delegates to the convention and that the delegates who had been selected by the appellant-defendant State Executive Committee of the Georgia Republican Party (Executive Committee) were not. Appellants answered, denying

the material allegations of the petition. Appellants also moved to dismiss, asserting, among other grounds, that the dispute involved the conduct of the internal affairs of the appellant-defendant Georgia Republican Party and, as such, the dispute was not justiciable in the courts of this state.

The trial court denied appellants' motion to dismiss and, having heard the case sitting without a jury, it entered an order declaring appellees to be the validly selected delegates and the selection of delegates by the appellant Executive Committee to be invalid. Appellants filed a notice of appeal from this order and moved that this court expedite consideration and resolution of the case. We granted appellants' motion for expedition. "Because of the need to act quickly . . . , we are deciding this case in an expedited manner even though this appeal was only recently filed and argued. This court's term will soon end. We do not normally decide cases during the last fifteen days of a term. OCGA §[§] 15-2-4[, 15-3-2]. However, . . . under our inherent power, this court may establish whatever rules are necessary to determine the cases which come before us. [Cits.] The inherent power to make the rules includes the concomitant power to suspend the rules in an appropriate case such as the one before us." *Shore v. Shore*, 253 Ga. 183, 184 (318 SE2d 57) (1984).

1. The motion to dismiss the appeal is denied.

2. Appellants enumerate the trial court's order as erroneous on the ground that "this dispute concerns the internal workings of a political party, specifically the selection of delegates to its state and national conventions, which is not justiciable by, and is beyond the jurisdiction of, the trial court. . . ."

"Delegates [to a National Political Party Convention] perform a task of supreme importance to every citizen of the Nation regardless of their State of residence. The vital business of the Convention is the nomination of the Party's candidates for the offices of President and Vice President of the United States. To that end, the state political parties are 'affiliated with a national party through acceptance of the national call to send state delegates to the national convention.' [Cit.] The States themselves have no constitutionally mandated role in the great task of the selection of Presidential and Vice-Presidential candidates. If the qualifications and eligibility of delegates to National Political Party Conventions were left to state law 'each of the fifty states could establish the qualifications of its delegates to the various party conventions without regard to party policy, an obviously intolerable result.' [Cit.] Such a regime could seriously undercut or indeed destroy the effectiveness of the National Party Convention as a concerted enterprise engaged in the vital process of choosing Presidential and Vice-Presidential candidates — a process which usually involves coalitions cutting across state lines. The Convention serves the perva-

sive national interest in the selection of candidates for national office, and this national interest is greater than any interest of an individual State." *Cousins v. Wigoda*, 419 U. S. 477, 489-490 (II) (95 SC 541, 42 LE2d 595) (1975). "It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates shall be seated." *O'Brien v. Brown*, 409 U. S. 1, 4 (92 SC 2718, 34 LE2d 1) (1972). "[I]t is not for the courts to mediate the merits of this dispute. . . . [A] State, or a court, may not constitutionally substitute its own judgment for that of the Party. A political party's choice among the various ways of de-termining the makeup of a State's delegation to the party's national convention is protected by the Constitution. And as is true of all ex-pressions of First Amendment freedoms, the courts may not interfere on the ground that they view a particular expression as unwise or ir-rational." *Democratic Party of U. S. v. Wisconsin*, 450 U. S. 107, 123-124 (III) (101 SC 1010, 67 LE2d 82) (1981). It follows that the instant dispute concerning the internal affairs of the Georgia Republi-can Party is a non-justiciable controversy which must be resolved by the 1988 National Republican Convention rather than by the courts of this state. Accordingly, the trial court erred in failing to grant ap-pellants' motion to dismiss appellees' petition for declaratory judg-ment.

3. Appellants' remaining enumerations of error are moot by vir-tue of our holding in Division 2.

4. "We extend the [April] term relative to this case to enable the appellees to file a motion for [rehearing]. OCGA §[§] 15-2-4[, 15-3-2]." *Haygood v. City of Doraville*, 256 Ga. 566, 567 (350 SE2d 766) (1986).

*Judgment reversed. Birdsong, C. J., McMurray, P. J., Banke, P. J., Sognier, Pope, and Beasley, JJ., concur. Deen, P. J., and Ben-ham, J., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

While concurring with Divisions 1 and 4 of the majority opinion, I must dissent from Divisions 2 and 3.

In this case, although the issue is in dispute, the appellees have compiled an impressive factual record containing thousands of pages of documents to support their contention that the upper-ranking leaders of the state Republican party, who supported a particular candidate, embarked upon a scheme or enterprise to systematically challenge the credentials of state convention delegations *only* from the counties in which a certain opposing candidate had prevailed in the primary election. That scheme, it was argued, was audacious in that the same alleged violations of elections rules occurred in many

counties that voted for the candidate favored by the appellants, yet systematically no challenges were made to the returns from those counties.

The appellees obtained two injunctions against the appellants, the gist of which was that the appellants could not exclude the appellees from participating in the state convention. These injunctions were in effect approved by the Georgia Supreme Court by virtue of its denial of the appellants' petitions for discretionary review of the grant of the injunctions. It is no more than conventional wisdom that the appellants, the appellees, the lower courts, and this court are all bound by the Supreme Court's action. The action of the appellants in adjourning and walking out of the state convention, which resulted in the "rump" convention of the appellees, served the purpose of ignoring or disobeying the injunctive relief won by the appellees. Cancelling the party altogether excluded the appellees from participating in the convention no less than did not inviting them in the first place. The spirit, if not the letter, of the injunctive relief was broken by the appellants.

Much of what the appellants have argued, about the impropriety of the courts resolving disputes over the internal operation or rules of a political party, is cogent. However, the Georgia Supreme Court has placed its imprimatur on judicial intervention in this political squabble, and this court cannot ignore that.

The majority opinion's argument that the courts cannot get involved in the resolution of political disputes is really an argument over a matter of degree, since whichever way this court rules, it, along with two separate trial courts and the Georgia Supreme Court, will have been involved in some manner in this drawn-out political dispute. It is acknowledged that courts are loath to inquire and trespass into the merits and beliefs of sensitive and perilous political and theological issues. However, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the *democratic* processes . . . Decision in this context, as in others, is very much a 'matter of degree . . .'" *Storer v. Brown*, 415 U. S. 724, 730 (94 SC 1274, 39 LE2d 714) (1974). (Emphasis supplied.)

To be sure, judicial intervention into political issues should occur only where a *compelling state interest* is at stake. *Republican Party of Conn. v. Tashjian*, 770 F2d 265, 281 (2d Cir. 1985), aff'd 479 U. S. 208 (107 SC 544) (1986). The instant case, however, involves such *an interest*, viz., the alleged nullification of a primary election and the effective disenfranchisement of a significant block of voters, occurring at a time when political parties urge adherence to a strict code of ethics. The appellants' assurance that no disenfranchisement occurred, because the alleged scheme to exclude the appellees was never

completed, is not persuasive, as it appears that only by the limited judicial intervention below did the plan go awry. Admittedly, the appellants may accomplish their goal before the national party committee, but that does not relieve the judiciary of its power and duty to require fair play and honesty in the state political party process, a requirement that is necessary to preserve in general the integrity of the political process itself and specifically the right of a meaningful vote and political association for all.

As it was ardently argued by the appellees, the various decisions of the United States Supreme Court, generally holding that the judiciary has no business with the selection of delegates of a national political party, relied on by the appellants, are under the facts here inapplicable. The appellees initially turned to the courts not for approval of any delegate selection, but rather only for the right as party members to be allowed to participate and be heard at the state convention and to be permitted to appeal any decisions not to the courts but to the whole convention. The appellees played by the rules at every turn, and the subsequent amendment of the complaint and ruling by the trial court upholding the appellees' delegate selection was a necessary response to the appellants' apparent intention to disregard or thwart the injunctive relief earlier won by the appellees and tacitly approved by the Georgia Supreme Court in its denial of a discretionary appeal. The appellants have strongly protested that judicial intervention infringes upon their constitutional right of free political association. It must be acknowledged that the appellees also have equal civil rights of political association in the selection process.

It is emphasized by appellees that the alleged fraudulent enterprise in this case as argued was perpetrated not merely upon the appellees, but upon the voters of this state. The righteous indignation communicated by the appellees is understandable, and "[i]t would be monstrous to suppose that the arm of the Judiciary of Georgia was too short, or too weak, to reach and relieve . . ." the compelling state interest in this case. *Rogers v. Atkinson*, 1 Ga. 12, 25 (1846).

On appeal, the evidence must be construed in a light most favorable to the appellees, and since there is evidence to support the findings and action of the trial court, the trial court should be affirmed. Accordingly, I must respectfully dissent.

I am authorized to state that Judge Benham joins in this opinion.

DECIDED JULY 29, 1988 —
REHEARING DENIED AUGUST 3, 1988

*Kent E. Mast, H. Quigg Fletcher, L. Catharine Cox, Oscar N. Persons, Frank B. Strickland,* for appellants.

*Celia Larsen, Wm. Washington Larsen, Jr., Garland T. Byrd, Charles W. Byrd,* for appellees.