S06A1690. MERRY v. WILLIAMS et al.

(642 SE2d 46)

CARLEY, Justice.

The act consolidating the City of Augusta and Richmond County governments (Consolidation Act), as amended, provides for a commission which shall consist of a mayor and ten commissioners. Ga. L. 1997, pp. 4690, 4691; Ga. L. 1995, pp. 3648, 3650, § 1. "Seven members of the [Commission] shall constitute a quorum for the transaction of ordinary business, and an affirmative vote of at least six members shall be required for the [Commission] to take action." Ga. L. 1995, pp. 3648, 3663, § 6. "The [Mayor] shall be a member of the [Commission]. Except as otherwise provided . . . , the [Mayor] shall have the right to vote only to make or break a tie vote on any matter." Ga. L. 1995, pp. 3648, 3658, § 2 (b). The Mayor Pro Tempore shall be elected at the Commission's first meeting in January of each year. Ga. L. 1995, pp. 3648, 3662, § 4 (b).

On January 3, 2005, Commissioner Marion Williams was elected to the office of Mayor Pro Tempore. In the next election on January 3, 2006, he received four "yes" votes and five "no" votes. Williams himself abstained, thereby preventing a potential sixth negative vote from the Mayor. In a second election at the same meeting, Commissioner Andy Cheek received five "yes" votes and four "no" votes. Williams again abstained, this time preventing Cheek from receiving a potential sixth affirmative vote from the Mayor. Subsequent nominations on January 17 for Williams, Cheek, and Commissioner Don Grantham similarly failed by votes of five to four. Bradford Merry, a citizen and taxpayer of Augusta-Richmond County, filed this petition for writ of mandamus and for declaratory judgment against the Commission, the Mayor, and each commissioner (Defendants), and for writ of quo warranto against Williams. See OCGA § 9-6-24; *League of Women Voters of Atlanta-Fulton County v. City of Atlanta*, 245 Ga. 301, 303-304 (1) (264 SE2d 859) (1980); *Head v. Browning*, 215 Ga. 263, 266-267 (2) (109 SE2d 798) (1959); *Kidd v. Nelson*, 213 Ga. 417 (1) (99 SE2d 123) (1957). Grantham filed a counterclaim and cross-claim for declaratory judgment. After a hearing, the trial court denied mandamus and quo warranto relief, dismissed the petition for declaratory judgment, and denied all other claims. Merry appeals from this order.

1. During the pendency of this appeal, Defendants submitted a certified copy of the minutes of the Commission meeting held on January 2, 2007. Those minutes show that Commissioner Betty Beard was elected Mayor Pro Tempore for 2007. Defendants urge that this election has rendered moot those enumerations which relate to the denial of mandamus and quo warranto relief. As for mandamus, Merry sought to compel Defendants to hold a new election for Mayor

Pro Tempore for 2006 and to require all commissioners to vote either affirmatively or negatively and not to abstain. Because the year 2006 ended and Defendants performed the public duty of electing a new Mayor Pro Tempore for 2007, Merry's prayer that mandamus be issued compelling them to perform that public duty is moot. *Baez v. Miller*, 266 Ga. 211 (465 SE2d 671) (1996). Merry petitioned for writ of quo warranto on the ground that Williams was improperly holding over in the office of Mayor Pro Tempore. Since a new Mayor Pro Tempore has been elected and Williams is no longer holding over, the issue of quo warranto is also moot. *Bruce v. Maxwell*, 270 Ga. 883 (515 SE2d 149) (1999). However, Defendants concede that the appeal is not moot with respect to the remaining claims for declaratory judgment and attorney's fees.

2. Merry contends that the trial court erred in failing to grant his petition for declaratory judgment as requested. The trial court dismissed it on the ground that an actual case or controversy does not exist and that declaratory relief would be advisory. Specifically, the trial court stated that the Mayor has the duty to determine how an abstention will be counted, that a commissioner may then challenge his ruling, and that the Commission will make the final decision, but that none of these actions has been taken. However, the trial court cites only general portions of the Commission's Rules of Procedure, which do not specifically provide for such actions. Furthermore, the Mayor, in announcing the votes in the unsuccessful 2006 elections for Mayor Pro Tempore, necessarily determined that Williams' abstention is not to be counted either affirmatively or negatively. Although some commissioners agreed with the Mayor's treatment of the abstentions, some disagreed, but the Commission repeatedly acquiesced in the Mayor's vote counts. The actions of Defendants indicate that the dispute over the method of counting abstentions was an actual controversy ripe for adjudication, Defendants have not made any showing that such controversy has ended, and Merry remains opposed to the Mayor's method of counting votes.

This case does not merely concern the internal operating procedures of the Commission, but rather involves interpretation of the voting requirements in the Consolidation Act and the Rules of Procedure, which is a proper subject for judicial review. *League of Women Voters of Atlanta-Fulton County v. City of Atlanta*, supra at 302-303 (1). See also *Harrison v. Arogeti*, 228 Ga. 55 (183 SE2d 761) (1971); *Aliotta v. Gilreath*, 226 Ga. 263, 264 (2) (174 SE2d 403) (1970). Compare *Stuckey v. Richardson*, 188 Ga. App. 147, 149 (2) (372 SE2d 458) (1988). "The parties appear to be in hopeless conflict as to the meaning of the charter provisions . . . , and as to the actions which they may legally take under the charter, and the case was a proper one for declaratory judgment." *Aliotta v. Gilreath*, supra at 264 (1). See also

*Rock v. Head*, 254 Ga. App. 382 (562 SE2d 768) (2002); *Cobb County v. Jones*, 179 Ga. App. 240 (345 SE2d 917) (1986). Furthermore, although the particular dispute regarding the 2006 election is over, we cannot conclude that the more general issue of the appropriate method for counting abstentions is moot. See *Vollrath v. Collins*, 272 Ga. 601 (1) (533 SE2d 57) (2000). Accordingly, consistent with Defendants' position with respect to mootness, we hold that the claim for declaratory judgment survives and is not moot. See *Cleland v. Gwinnett County*, 226 Ga. App. 636, 639 (487 SE2d 434) (1997). The construction of charter provisions, ordinances, or regulations presents questions of law. *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (476 SE2d 53) (1996). Thus, we decline to remand this case to the trial court for determination of such questions, and instead turn to the merits of the declaratory judgment action. See *Cramer v. Spalding County*, 261 Ga. 570, 572-575 (2)-(5) (409 SE2d 30) (1991).

3. Merry urges that the six-vote requirement in the Consolidation Act should be interpreted as consistent with the common law rule, which requires only a simple majority of a quorum. However, charter and other statutory provisions frequently depart from the common law rule, primarily by requiring a majority or designated percentage of the whole council or all members, or by using similar language. Reynolds, *Voting Requirements in Municipal Governing Bodies: Minority Rule or Legislative Stalemate?*, 27 Urb. Law. 87, 93 (III), 101 (IV) (1995). See also OCGA § 1-3-1 (d) (5) (the number of officers required to execute a joint authority may be "otherwise declared"); *Aliotta v. Gilreath*, supra at 265 (2); Anno., 43 ALR2d 698, §§ 4-7. The departure from the common law is even more clear where, as here, the charter requires the affirmative vote of a specific minimum number of commissioners. *Merrill v. City of Lowell*, 128 NE 862, 863 (Mass. 1920). "[W]e cannot ignore the plain meaning of the charter provision which requires an affirmative vote by [six] commissioners. [Cit.]" *Eastgate Theatre v. Bd. of County Commissioners of Washington County*, 588 P2d 640, 642, fn. 5 (Or. App. 1978).

> The legislature, in creating the [Commission] . . . , did not leave the question of the manner in which the [C]ommission should exercise its powers to the uncertainties of judicial construction, but expressly limited the authority of the [C]ommission to take official action . . . . Applying the plain language of [the Consolidation Act], it means that . . . [t]he disposition of . . . a proposition must . . . be deferred until . . . a vote can be taken which will result in at least [six] votes being cast on one side of the proposition or the other.

*Harrison v. Arogeti,* supra at 58 (1) (construing an act requiring "the affirmative vote of at least three members of the commission, or two members and the chairman"). See also *Roberts v. Dancer,* 20 Ga. App. 752 (93 SE 297) (1917).

4. Merry complains of the Commission's practice of allowing commissioners who abstain for any reason to be counted as voting neither in the affirmative nor in the negative. He describes such practice as unconstitutionally contrary to public policy, and argues that the Consolidation Act and the Rules of Procedure cannot be construed to authorize the practice, and thereby to frustrate the Commission's governing ability and thwart majority rule.

The Consolidation Act is the governing local act or charter enacted by the General Assembly, and the Rules of Procedure are adopted by the Commission to guide its proceedings. The Commission may exercise those powers which are vested in the governing authorities of counties as well as municipalities. Ga. L. 1995, pp. 3648, 3650, § 1. Where, as here, neither the Commission nor the County's electors follow the procedures for amending or repealing the Consolidation Act, the Commission may adopt clearly reasonable ordinances, resolutions, or regulations which are not inconsistent with any applicable local law or charter provision. Ga. Const. of 1983, Art. IX, Sec. II, Par. I (a); OCGA § 36-35-3 (a); *City of Buchanan v. Pope,* supra at 718 (1) (b). See also R. Perry Sentell, Jr., *The Georgia Home Rule System,* 50 Mercer L. Rev. 99, 108 (II) (B) (1), 111 (II) (B) (2), 133-136 (II) (B) (4), (5), 147 (II) (C) (1998). Compare Ga. L. 1995, pp. 3648, 3670, § 15 (authorizing a supermajority of the Commission to change provisions of the Consolidation Act which conflict with existing or future state or federal laws). The Commission may adopt rules which govern its procedure, as it is authorized to "organize itself." Ga. L. 1995, pp. 3648, 3662, § 4 (c). However, such rules must be read in conjunction with the express requirement in the Consolidation Act for an affirmative vote of at least six members. See *Georgia Branch, Assoc. General Contractors of America v. City of Atlanta,* 253 Ga. 397, 400 (3) (321 SE2d 325) (1984). The Consolidation Act prevails over inconsistent rules and ordinances, and its construction is a proper matter for decision by this Court. *City of Buchanan v. Pope,* supra at 717, 718 (1) (b).

(a) We first consider whether abstentions should be counted, consistent with the common law rule, as either affirmative votes or acquiescence with the majority.

> Where a statute or charter requires a designated percentage of "the whole council," "all members," or similar language, a majority of cases have held that this does overcome the common law presumption that allows counting abstentions

as affirmative votes. . . . Similarly, a statement in legislation that action requires "the affirmative vote" of a specified majority may exhibit legislative intent that abstentions not be counted with the majority of votes cast . . . .

Reynolds, supra at 96, 99 (III). See also Anno., 63 ALR3d 1072, §§ 3, 7 [b].

There are cases which seem to be authority for the view that, even in the face of a clear statutory or charter requirement such as we have here, a member who refuses to vote may be counted on the side of those members, less than the required number, who voted for the motion or resolution. [Cits.] In these cases what was said in this regard was not necessary to the decision. . . . That view, we think, represents an unwarranted extension of the [common law] doctrine . . . .

*State v. Gruber*, 373 P2d 657, 660 (Or. 1962). We acknowledge the "validity of the common-law rule that council members have a duty to vote and should not be allowed to prevent government action by inaction; however, here the governing statute unambiguously requires an affirmative vote of" at least six members of the Commission. *City of Haven v. Gregg*, 766 P2d 143, 147 (Kan. 1988). An abstention is not an affirmative vote. We conclude that the language of the affirmative six-vote requirement in the Consolidation Act "clearly prohibits counting an abstention or refusal to vote as affirmative action." *City of Haven v. Gregg*, supra. See also *Braddy v. Zych*, 702 SW2d 491, 495 (Mo. App. 1986).

(b) However, the statutory requirement for an affirmative vote of at least six commissioners does not imply that an abstention must be counted as a negative vote. The Consolidation Act merely forbids counting anything other than affirmative votes in determining whether a proposal before the Commission succeeds. It does not prohibit the procedure of simply not counting abstentions. Therefore, that method of handling abstentions must be followed if the Commission's Rules of Procedure so require.

The trial court found that the initial draft of the Rules "provided a vote of 'abstain' would be deemed a 'no' for purposes of counting the votes of members of [the] Commission." That provision was deleted in an amended draft. The trial court further found as follows:

The changes in the abstention rules were specifically called to the attention of the Commissioners by the Deputy Clerk . . . in the meeting . . . just before the vote. The Commissioners voted 6-3-1 to adopt the rules of procedure from which the

sections providing for the casting of an "abstain" vote being counted as a "no" vote were expressly deleted.

Thus, the Commission knowingly and purposely rejected a rule requiring that abstentions be counted as negative votes. Furthermore, Rule 6.01 of the Rules of Procedure establishes Robert's Rules of Order as additional parliamentary authority:

> The latest edition of ROBERT'S RULES OF ORDER NEWLY REVISED shall govern meetings of the [Commission] in all areas in which it is applicable and in which it is not inconsistent with these rules adopted by the Commissioners, or with higher law.

The latest edition is the tenth, published in 2000, which, like earlier editions, provides that, "[a]lthough it is the duty of every member who has an opinion on a question to express it by his vote, he can abstain, since he cannot be compelled to vote." Robert's Rules of Order Newly Revised (10th ed.), p. 394, 1. 6-9. "The clear implication from that provision is that an abstention is not to be counted as a vote." *Rockland Woods, Inc. v. Village of Suffern*, 340 NYS2d 513, 514 (N.Y. App. Div. 1973).

Therefore, we hold that, while the Consolidation Act requires that abstentions by commissioners not be counted as affirmative votes, the Rules of Procedure provide that they not be counted as negative votes. In this regard, the Rules are not inconsistent with the Consolidation Act. See Ga. Const. of 1983, Art. IX, Sec. II, Par. I (a); OCGA § 36-35-3 (a); Ga. L. 1995, pp. 3648, 3662, § 4 (c). Under the current law applicable to Augusta-Richmond County, abstentions by commissioners must not be counted as either affirmative or negative votes. In addition to the construction of the Consolidation Act and Rules of Procedure, Merry urges on appeal a constitutional issue which the trial court did not address below. " ' "We will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point (cit.)." (Cits.)' [Cits.]" *Sears v. Dickerson*, 278 Ga. 900, 901 (1) (607 SE2d 562) (2005). "Accordingly, we reverse the dismissal of this declaratory judgment action and remand [the case] for the entry of an order consistent with this opinion." *Cramer v. Spalding County*, supra at 575 (5).

5. Merry also contends that the trial court erred in denying his request for attorney's fees and expenses of litigation. He bases this enumeration on his assertions that the trial court erred on the merits and that some of the Defendants supported his position. Although the trial court erroneously dismissed the petition for declaratory judgment, Merry failed to show that he was entitled to the declaratory

relief which he sought. In light of our disposition of this case, the trial court did not err in denying Merry's claims for attorney's fees and expenses of litigation. See *Burns v. Dees*, 252 Ga. App. 598, 608 (1) (e) (557 SE2d 32) (2001).

*Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.*

DECIDED FEBRUARY 5, 2007.

*Joseph R. Neal, Jr.*, for appellant.

*Shepard, Plunkett, Hamilton & Boudreaux, Stephen E. Shepard, Charles H. S. Lyons III, Capers, Dunbar, Sanders & Bruckner, Emory F. Sanders, Sr., Benjamin Allen, Tucker, Everitt, Long, Brewton & Lanier, John B. Long, Hull, Towill, Norman, Barrett & Salley, David E. Hudson*, for appellees.