## A10A0763. HUMPHREYS v. THE STATE.
(696 SE2d 400)

BARNES, Presiding Judge.

Following his conviction for driving with a suspended license, Jerome Pajet Humphreys appeals the denial of his motion to suppress. He argues that the police officer lacked reasonable articulable suspicion of wrongdoing sufficient to justify the stop. Following our review, we affirm.

In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment. *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006). The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed unless no evidence exists to support them. Id. at 459-460; see also *Evans v. State*, 262 Ga. App. 712 (1) (586 SE2d 400) (2003). We "cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision." (Citation and punctuation omitted.) *State v. Lanes*, 287 Ga. App. 311, 312 (651 SE2d 456) (2007).

So viewed, the evidence shows that while performing random checks of motor vehicle tags, a patrol officer with the Morrow Police Department checked the tag of a vehicle through the Georgia Crime Information Center (GCIC) and the National Crime Information Center (NCIC). He discovered that the owner of the vehicle was male and had a suspended driver's license. He observed that the driver of the vehicle was male, and assuming that it was the vehicle's owner, stopped the car.

After he was stopped, Humphreys did not give the officer a driver's license, but instead gave him a Georgia identification card. The officer checked the status of Humphreys' driver's license and determined that it had been revoked and Humphreys was listed as a habitual violator. He subsequently arrested Humphreys for driving with a suspended license. The officer recovered a clear bag containing suspected marijuana during the search incident to the arrest. Humphreys was later charged by accusation with one count of driving with a suspended license and one count of possession of less than one ounce of marijuana.

Humphreys filed a motion to suppress, challenging the stop, and following a hearing the trial court denied the motion. After his ensuing jury trial, Humphreys was found not guilty of possession of marijuana and guilty of driving with a suspended license. He was sentenced to serve 12 months in jail.

Humphreys appeals the denial of his motion to suppress, contending that the officer lacked reasonable articulable suspicion

sufficient to justify the stop. We do not agree.[1]

"Under the U. S. Constitution, a traffic stop is reasonable where the police have probable cause to believe that a traffic violation has occurred." (Citation and punctuation omitted.) *Maxwell v. State*, 249 Ga. App. 747, 748 (549 SE2d 534) (2001), citing *Whren v. United States*, 517 U. S. 806, 810 (II) (116 SC 1769, 135 LE2d 89) (1996). In *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979), the United States Supreme Court held that stopping a vehicle and detaining the driver to check his driver's license and registration is unreasonable under the Fourth Amendment, unless there exists an articulable and reasonable suspicion that the driver is unlicensed, the vehicle is unregistered, or the driver or vehicle is otherwise subject to seizure for violation of the law. Id. at 663. We have observed that articulable suspicion must be an

> objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. That determination can only be made after considering the totality of the circumstances or the whole picture. Based upon that whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Citations and punctuation omitted.) *State v. Dixson*, 280 Ga. App. 260, 261 (633 SE2d 636) (2006).

In *Self v. State*, 245 Ga. App. 270 (537 SE2d 723) (2000), a police officer checked a vehicle's license plate before stopping it and found that it was registered to another vehicle. We expressly held that "the potential violation of OCGA § 40-2-6 supported the stop of the vehicle." Id. at 274 (3) (a). Implicit in our holding was that the information provided by the GCIC was justification for the initial stop of the vehicle. We further elaborated that the *investigatory* stop was upheld as valid only when additional facts were considered: the vehicle had been described by the victims of the crime; police officers had been notified that the vehicle was back at the crime scene, had located it within moments of being notified of its whereabouts and had observed unusually slow movements by the vehicle. Id. Likewise, in *Thompson v. State*, 289 Ga. App. 661 (658 SE2d 122) (2007), on facts almost identical to Humphreys, we found the stop valid where a police officer randomly checked the tag on Thompson's vehicle and found that it was registered to another vehicle. We held that the stop

---

[1] We do not address the issue of whether officers are authorized to use the Georgia Crime Information Center computers for random checks of the status of vehicles or drivers who are otherwise lawfully driving on the roadway because that issue was not raised below.

was valid "because officers are authorized to stop vehicles for traffic violations." Id. at 662-663. See also *Cunningham v. State*, 231 Ga. App. 420 (498 SE2d 590) (1998) (police were authorized to stop a vehicle based upon a tag violation although after arresting the defendant, the officer discovered that the dispatcher had given him misinformation).

The officer in this case testified that in his duties as a traffic enforcement officer he would "look for any type of traffic violations or any type of violations in reference to registration or driver's license." He further testified that in randomly checking tags on the roadway on the day Humphreys was stopped it appeared that "the driver [of the car Humphreys was operating] was possibly driving, operating the vehicle with a suspended license." As in *Self*, here the particularized and objective basis for the initial stop was the information from GCIC — in this case, that the male owner of the registered vehicle Humphreys was operating had a suspended driver's license.

However here, once the stop was made and it was ascertained that Humphreys was not the owner of the car, the officer had a duty to further investigate only because Humphreys could not produce a driver's license. Thus, as the officer was authorized to stop the vehicle Humphreys was driving because of the perceived traffic violation, and continue his investigation because Humphreys did not have a driver's license, we affirm the trial court's denial of Humphreys' motion to suppress.

*Judgment affirmed. Blackburn and Bernes, JJ., concur.*

DECIDED JUNE 8, 2010.

*Lister & Holt, Kristi L. Winstead*, for appellant.
*Tasha M. Mosley, Solicitor-General, Paula M. Mickens, Assistant Solicitor-General*, for appellee.