**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 5, 2013**

# In the Court of Appeals of Georgia

A12A1715. HERNANDEZ-LOPEZ v. THE STATE.

DILLARD, Judge.

In this interlocutory appeal, Salomon Hernandez-Lopez appeals the trial court's denial of his motion to suppress, which was related to a traffic stop following a law-enforcement officer's use of a license-plate reader system. Hernandez-Lopez argues that (1) the officer lacked reasonable, articulable suspicion to perform the traffic stop and (2) the license-plate reader system fails to meet foundational requirements for admissibility as established for radar detectors. For the reasons set forth *infra*, we affirm the trial court's denial of Hernandez-Lopez's motion to suppress.

Construing the evidence most favorably to uphold the trial court's findings and judgment,[1] the record reflects that some of the Gwinnett County Sheriff's Department patrol cars are equipped with license-plate reader ("LPR") systems. This system consists of mounted cameras that read license plates of passing vehicles to transmit the information to a database of wanted persons. The database is updated daily and includes information about the wanted person and the relevant vehicle. The information is provided by the Georgia Bureau of Investigation, Department of Motor Vehicles, Federal Bureau of Investigation, and Warrant Division. When the LPR recognizes a license plate linked to a wanted person, the system makes an audible alert; notifies the officer of a "wanted person"; and provides the officer with an opportunity to view the information the system has retrieved, including the person's name and date of birth, the reason the person is sought, and a color photograph of the vehicle and its license plate.

On the day in question, an officer with the Gwinnett County Police Department was patrolling Georgia State Route 316 in a car with an LPR system when he received a "wanted person" alert. The alert indicated that the wanted person was a

---

[1] *See Humpreys v. State*, 304 Ga. App. 365, 365 (696 SE2d 400) (2010) ("In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment.").

male named Eloy Hernandez-Lopez and that he was being sought for failure to appear in court. Upon identifying the relevant vehicle and seeing that it was driven by an adult male, the officer conducted a traffic stop.

When the officer approached the vehicle, he asked Hernandez-Lopez for his driver's license, but Hernandez-Lopez responded that he did not have a driver's license and instead provided the officer with a Mexican identification card. The officer learned that although the driver's last name matched that of the wanted person—Hernandez-Lopez—his first name did not. The officer then returned to his patrol car with the identification card and ran Hernandez-Lopez's full name and date of birth through GCIC, but the system returned that no such driver was found. Thereafter, Hernandez-Lopez was arrested for driving without a license.

Hernandez-Lopez was subsequently charged by accusation for driving without a valid license and filed a motion to suppress the officer's traffic stop. Following a hearing on the matter, the trial court denied the motion but granted a certificate of immediate review. We granted Hernandez-Lopez's application for interlocutory appeal, which follows.

At the outset, we note that when deciding whether to grant or deny a motion to suppress, a trial court sits as the trier of fact, and "its findings are akin to a jury

verdict and will not be disturbed unless no evidence exists to support them."[2] Accordingly, we cannot, and will not, "usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision."[3] With these guiding principles in mind, we turn now to Hernandez-Lopez's enumerations of error.

1. Hernandez-Lopez first argues that the officer lacked reasonable, articulable suspicion to perform a traffic stop based on the alert received through the LPR. We disagree.

To begin with, stopping and detaining a driver to check his license and registration is appropriate when an officer has a reasonable and articulable suspicion that "the driver or vehicle is . . . subject to seizure for violation of the law."[4] In this respect, we have held that "articulable suspicion must be an objective manifestation

---

[2] *Id.*

[3] *Id.* (punctuation omitted).

[4] *Id.* at 366; *see also Delaware v. Prouse*, 440 U.S. 648, 663 (VII) (99 SCt 1391, 59 LE2d 660) (1979) ("[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.").

that the person stopped is, or is about to be, engaged in criminal activity," and that this "determination can only be made after considering the totality of the circumstances . . . ."[5] And based upon this holistic approach, the detaining officer must "have a particularized and objective basis for suspecting the particular person stopped of criminal activity."[6]

Here, based on the alert and information he received from the LPR system, the officer had reason to believe the male driver of the relevant vehicle was wanted for failure to appear in court, which provided reasonable, articulable suspicion to conduct a traffic stop.[7]

The information retrieved via the LPR system is not unlike that an officer retrieves by way of running vehicle-tag numbers through GCIC, which we have previously held provides justification for an initial stop.[8] Moreover, in an unpublished

---

[5] *Humphreys*, 304 Ga. App. at 366 (punctuation omitted).

[6] *Id.*

[7] *See Hastings v. State*, 211 Ga. App. 873, 874 (2) (441 SE2d 83) (1994) (holding that officer had "sufficient articulable suspicion for [a] stop" when a bench warrant had been issued for appellant for failure to appear in court).

[8] *See Humphreys*, 304 Ga. App. at 367 ("[T]he particularized and objective basis for the initial stop was the information from GCIC—in this case, that the male owner of the registered vehicle [the appellant] was operating had a suspended driver's

5

opinion, the Eleventh Circuit recently addressed use of the LPR system in the context of a case invoking the right to be free from an unreasonable search,[9] noting that the Supreme Court of the United States has "concluded in similar contexts that visual surveillance of vehicles in plain view does not constitute an unreasonable search for Fourth Amendment purposes," and that "[t]his is true even if the surveillance is aided by the use of technology to augment the officers' sensory faculties."[10] Similarly, the

---

license."); *see also Thompson v. State*, 289 Ga. App. 661, 661 (658 SE2d 122) (2007) (concluding that stop was authorized when officer "randomly checked [defendant's] vehicle's tag and learned that the tag on the vehicle was registered to a different vehicle"); *Self v. State*, 245 Ga. App. 270, 274 (3) (a) (537 SE2d 723) (2000) (holding that stop was justified when officer testified that "he checked the vehicle's license tag prior to stopping it and determined that the tag belonged to a pickup truck" because "the potential violation of OCGA § 40-2-6 supported the stop of the vehicle").

[9] *See United States v. Wilcox*, 415 Fed. Appx. 990 (11th Cir. 2011) (per curiam).

[10] *Id.* at 992 (II); *see New York v. Class*, 475 U.S. 106, 114 (III) (B) (106 SCt 960, 89 LE2d 81) (1986) ("[I]t is unreasonable to have an expectation of privacy in an object required by law to be located in a place ordinarily in plain view from the exterior of the automobile."); *United States v. Knotts*, 460 U.S. 276, 282 (II) (103 SCt 1081, 75 LE2d 55) (1983) ("Nothing in the Fourth Amendment prohibited the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in this case."); *see also* OCGA § 40-2-41 (providing that "every vehicle required to be registered under this chapter, which is in use upon the highways, shall at all times display the license plate issued to the owner for such vehicle, and the plate shall be fastened to the rear of the vehicle in a position so as not to swing and shall be at all times plainly visible").

LPR system at issue in the case *sub judice* merely aided the officer by augmenting his sensory faculties, providing an enhanced ability to process tag information through a law-enforcement database rather than requiring the officer to manually conduct random checks.[11] And the information retrieved by the system's recognition of the license-plate numbers—*i.e.*, identifying information of a wanted person, the offense allegedly committed by the wanted person, and a photograph of the relevant license plate and vehicle—gave the officer reasonable, articulable suspicion to justify a

---

[11] *See Wilcox*, 415 Fed. Appx. at 992 (II); *see also Knotts*, 460 U.S. at 284 (II) ("We have never equated police efficiency with unconstitutionality, and we decline to do so now.").

traffic stop of the vehicle driven by Hernandez-Lopez.[12] Thereafter, the officer had probable cause to arrest Hernandez-Lopez for driving without a license.[13]

2. Next, Hernandez-Lopez argues that the trial court erred in denying his motion to suppress when the LPR system failed to meet foundational requirements for admissibility, as have been established for radar detectors. We disagree.

For data collected by a radar device to be admissible into evidence, the State must establish that (1) the device is marketed under a particular name or is similar and

---

[12] *See People v. Davila*, 901 N.Y.S.2d 787, 791(N.Y. Sup. 2010) (holding that, despite failure to adhere to two-step protocol set forth by police department before stopping a vehicle subject to an LPR alert, officers conducted a lawful stop based on the return of an alert); *see also United States v. Lurry*, Case No. 09–20312–JPM-dkv, 2010 WL 4628178, at *6 (II) (A) (W.D. Tenn. June 23, 2010) (recommending denial of motion to suppress and concluding that "the license plate reader's alert raised a reasonable, particularized suspicion that the driver of the vehicle was involved in criminal activity"), *adopted in part and rejected in part on other grounds*, Case No. 2:09–cr–20312–JPM, 2010 WL 4628129, at *5 (III) (b) (W.D. Tenn. Nov. 8, 2010) (overruling defendant's objection to traffic stop and determining that officer "had an objectively reasonable suspicion to conduct an investigatory stop" when LPR system alerted officer "that the car's owner or occupant had an outstanding warrant"). *But cf. Green v. City & County of San Francisco*, Case No. C 10–02649 RS, 2011 WL 4434801, at *5 (IV) (A) (N.D. Cal. Sept. 23, 2011) (suggesting that LPR alert alone does not automatically support a vehicle stop without independent officer verification of information supplied by system).

[13] *See Horne v. State*, __ Ga. App. __, __ (3) (733 SE2d 487) (2012) (following lawful traffic stop for a different offense, "[w]hen the officer learned that [defendant] did not have a valid driver's license, the officer had probable cause to arrest [defendant] for driving without a license").

approved by the Department of Public Safety for the measurement of speed, (2) the law-enforcement agency has a particular license, (3) the device has been certified for compliance by a special technician, and (4) the device has passed tests for accuracy.[14] Hernandez-Lopez argues that, in order to be admissible, the LPR system at issue was required to meet similar requirements and that the State failed to establish same. But Hernandez-Lopez's argument is misplaced because the admissibility of a radar detector is inapposite as that device is used to *prove* commission of the offense at issue,[15] whereas the use of the LPR merely provides an officer with reasonable, articulable suspicion to justify an investigatory stop.[16] Accordingly, the trial court did not err by denying the motion to suppress on this ground.[17]

---

[14] *See Hardaway v. State*, 207 Ga. App. 150, 151 (427 SE2d 527) (1993); *see also* OCGA 40-14-7 (superseding a fifth requirement); *Carver v. State*, 199 Ga. App. 842, 842 (406 SE2d 236) (1991) (recognizing that fifth requirement was superseded by statute).

[15] *See Hardaway*, 207 Ga. App. at 150-52 (reversing speeding conviction when State failed to strictly comply with third requirement for admissibility of radar detector).

[16] *See supra* Division 1.

[17] We do not address Hernandez-Lopez's contention that operation of the LPR system "is overly intrusive as it creates an unreasonable detention of an individual who may not have broken any laws or committed any traffic offense whatsoever" because this argument was not made below. *See Owens v. State*, 308 Ga. App. 374,

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

---

380 (3) (707 SE2d 584) (2011).