**WHOLE COURT**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

April 12, 2013

# In the Court of Appeals of Georgia

A12A2397. RODRIGUEZ v. THE STATE.

PER CURIAM.

After being indicted for possession of marijuana with intent to distribute, Sonia Rodriguez filed a pre-trial motion to suppress the marijuana found by police when an officer stopped the vehicle she was driving and searched the vehicle pursuant to her consent. In this interlocutory appeal from the trial court's denial of the motion, Rodriguez claims that her consent was involuntary and the search was illegal under the Fourth Amendment because: (1) there was no valid basis for the initial vehicle stop, and (2) even if the initial stop was valid, police searched the vehicle pursuant to an impermissible expansion of the scope and duration of the stop. We find that the trial court correctly denied the motion to suppress and affirm.

A police officer stopped the vehicle driven by Rodriguez based on information provided to the officer by an automatic license plate recognition (LPR) system. The LPR system used cameras mounted on the officer's marked police car to record images of license plates on passing vehicles, including the white Chevrolet Impala driven by Rodriguez. The LPR system transmitted an image of the Impala's license plate to a computer which automatically compared the license plate characters to a Georgia Bureau of Investigation database of outstanding arrest warrants. As the Impala passed by the officer's car, the LPR system alerted the officer that Enrique Sanchez, born on August 24, 1987, was wanted on an outstanding arrest warrant for failure to appear in court on citations issued to Sanchez while driving the Impala with the displayed license plate. Based on the alert showing that Sanchez was the subject of an outstanding arrest warrant and had previously driven the passing Impala, the officer radioed other officers with information about the alert and pursued and stopped the vehicle.

When the officer stopped the vehicle, he immediately ran a computer check on the license plate which showed that the vehicle was registered to Sonia Rodriguez. The officer approached the vehicle and observed that it was occupied by the driver and a front seat passenger. The officer asked for a driver's license from the driver,

2

who provided a license showing the name Sonia Rodriguez, and asked for identification from the passenger, who gave the name Ereka Williams and a date of birth. As he obtained this information, the officer explained that he made the stop based on information that Enrique Sanchez had been cited for violations while driving the vehicle and failed to appear in court, and Rodriguez told the officer that Sanchez was her son and that he failed to appear because he was in prison. Upon obtaining identification information from the vehicle occupants, the officer immediately ran a computer check to look for any outstanding arrest warrants on the driver and the passenger and to verify the status of the driver's license. The computer check revealed that the passenger had an outstanding arrest warrant from the State of Florida, and showed that the passenger's driver's license had been suspended for a controlled substance violation. At the same time the officer received this information on the computer check, a second officer, who had received radio information on the LPR system alert, arrived at the scene approximately four minutes after the initial stop. At that point, the officers waited for verification of extradition of Williams on the Florida charge, which one of the officers stated takes "a couple of minutes." While waiting, one officer asked for and obtained consent from Rodriguez to search the vehicle. At the same time, the other officer informed Williams about the Florida

3

arrest warrant and asked for and obtained consent to search inside Williams' purse located on the front passenger seat of the vehicle. When one of the officers reached into the vehicle to obtain Williams' purse, he smelled the odor of raw marijuana in the vehicle. In the search of the vehicle pursuant to Rodriguez's consent, the officers found marijuana in the vehicle console and trunk. Marijuana was also found in a search of Williams' purse.

1. Rodriguez waived the claim asserted on appeal that the initial stop of the vehicle – based solely on information provided by the LPR system – was invalid.

Rodriguez's written amended motion to suppress evidence of the marijuana did not assert that the initial stop of her vehicle was invalid. Rather, the motion claimed only that, after the officer stopped the vehicle and the reason for the initial stop had concluded, an officer illegally obtained her consent to search the vehicle by actions beyond the scope and duration of the initial stop. Likewise, at the hearing on the amended motion to suppress, Rodriguez made the same claim asserted in the written motion and made no claim that the initial stop was invalid. At the conclusion of the hearing on the motion to suppress, the trial court gave the parties the opportunity to file post-hearing briefs and stated "we're addressing the issue of whether the stop's any good at all." It is unclear whether the court was referring to whether the initial

4

stop was valid (a claim not made by Rodriguez in the motion or at the hearing), or to the actions taken by the officers after the initial stop. In any event, after the hearing, Rodriguez filed a brief in which she argued for the first time in the trial court that the State failed to produce evidence at the hearing showing that the LPR system was reliable enough under *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982) to provide a basis for the initial stop, and failed to show that the LPR system provided the officer with information sufficient to create reasonable suspicion to make the initial stop.

> [E]vidence exclusion is an extreme sanction and one not favored in the law. For this reason, OCGA § 17–5–30 (b) requires a motion to suppress to be in writing and to state facts showing that the search and seizure were unlawful. On a motion to suppress, the State is entitled to proper notice of the issue raised or it will be deemed waived. In other words, the suppression motion must be sufficient to put the State on notice as to the type of search or seizure involved, which witness[es] to bring to the hearing on the motion, and *the legal issues to be resolved at that hearing*.

*State v. Gomez*, 266 Ga. App. 423, 425 (597 SE2d 509) (2004) (punctuation and citations omitted); *Young v. State*, 282 Ga. 735, 736-738 (653 SE2d 725) (2007). The State was plainly not given the required pre-hearing notice of claims that the initial stop was invalid because the LPR system was not reliable under *Harper* or because

5

the system failed to provide the officer with reasonable suspicion. Accordingly, these claims were waived. Id.[1]

2. Assuming the LPR system provided the officer with information sufficient to justify the initial stop pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968), as the trial court ruled, there is no basis for finding that the

------

[1] Even assuming these claims were not waived, the State showed that the LPR system provided the officer with information that the vehicle at issue had been driven by Sanchez, who was the subject of an outstanding arrest warrant issued on probable cause of prior criminal conduct. *Hernandez-Lopez v. State*, __ Ga. App. __ (Case No. A12A1715, decided Feb. 5, 2013). This connection between Sanchez and the vehicle was sufficient to authorize police to stop the vehicle pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968) to investigate a reasonable suspicion that Sanchez was the driver or an occupant of the vehicle. *Hernandez-Lopez*, supra; see *United States v. Hensley*, 469 U. S. 221, 229-230 (105 SCt 675, 83 LE2d 604) (1985) (reasonable suspicion of past criminal conduct justifies *Terry* stop; promotes public interest in identifying and promptly detaining suspects). For example, in *United States v. Tellez*, 11 F3d 530, 531-533 (5th Cir. 1993), police had information that a person the subject of an outstanding arrest warrant had been seen in a described vehicle. Id. This information was sufficient to authorize a subsequent *Terry* stop of a vehicle exactly matching that description to investigate a reasonable suspicion that the person sought on the warrant was an occupant of the vehicle. Id. The *Terry* stop was valid even though the person was not found in the vehicle. Id. Moreover, the test established in *Harper*, 249 Ga. 519, applies to determining the admissibility of expert testimony in support of novel scientific procedures offered as substantive evidence directly bearing on guilt or innocense. Id. at 523-525; *Al-Amin v. State*, 278 Ga. 74, 81 (597 SE2d 332) (2004). The *Harper* test does not apply to determine the admissibility of information generated by the LPR system offered, not as substantive evidence directly bearing on guilt or innocense, but to prove the manner in which police acquired reasonable suspicion to stop the vehicle. *Al-Amin*, 278 Ga. at 81.

consent Rodriguez gave to search the vehicle was invalid as the product of an improper expansion of the scope or duration of the stop.

"Under *Terry*, an officer's actions taken during a valid traffic stop must be reasonably related in scope to the circumstances which justified the stop in the first place, and limited in duration to the time reasonably necessary to accomplish the purpose of the stop." *State v. Williams*, 264 Ga. App. 199, 202 (590 SE2d 151) (2003). The basis for the officer's *Terry* stop of the vehicle was to investigate a reasonable suspicion that a person named Enrique Sanchez, who was wanted on an arrest warrant, was the driver or an occupant of the vehicle. When the officer approached the vehicle, he observed that both occupants of the vehicle appeared to be female. The record does not disclose whether the LPR system alert informed the officer that Enrique Sanchez was male. Even if the officer assumed, based on the name provided in the alert, that the person wanted on the warrant was probably male, and assumed based on appearance that the occupants of the vehicle were female, this did not require that the officer simply walk away from the stop without confirming the identities of all the vehicle occupants. It was reasonably within the scope of the circumstances which justified the stop for the officer to continue to investigate by seeking identification from the vehicle driver and passenger. Once the officer

7

undertook to do so within the scope of the stop, it did not unreasonably expand the scope or the duration of the stop for the officer to conduct a computer check on the identification information for the purpose of determining whether the driver or the passenger had outstanding warrants against them. *Williams*, 264 Ga. App. at 202-203. "Even though such checks are not related to the circumstances which justified the stop, they are motivated by officer safety issues inherent in the stop." Id. at 203.

The record shows that only four minutes after the initial vehicle stop was made the officer received computer confirmation that the passenger, Williams, was the subject of an outstanding arrest warrant from the State of Florida. While waiting "a couple of minutes" for verification of extradition of Williams on the Florida charge, an officer asked for and received permission from Rodriguez to search the vehicle. Thus, the officer's questioning of Rodriguez concerning a consensual search of the vehicle occurred during a reasonably short prolongation of the stop for the purpose of verifying extradition on the outstanding warrant. "The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search." *Salmeron v. State*, 280 Ga. 735, 736 (632 SE2d 645) (2006). Even though the officer's request for consent to search was unrelated to the purpose of the stop, "[a] valid ongoing seizure

8

is not rendered 'unreasonable' simply because, during its course, certain unrelated questions, which the detainee is free to decline to answer, are posed to him or her." Id. at 738. Accordingly, the consent to search the vehicle given by Rodriguez was voluntary and not the product of an illegally expanded vehicle stop.

*Judgment affirmed. Andrews, P. J., and Barnes, P. J., concur. Boggs and Branch, JJ., concur in Division 2 and in the judgment. Ray and McMillian, JJ., concur in the judgment only. Ellington, C. J., Miller, P. J., Phipps, P. J., Doyle, P. J., and Dillard and McFadden, JJ., dissent.*

A12A2397. RODRIGUEZ v. THE STATE.

DOYLE, Presiding Judge, dissenting.

I respectfully dissent because I believe that based on the facts, the officer lacked a sufficient basis for initiating the stop. Therefore, I would reverse the trial court's denial of Rodriguez's motion to suppress.

At the outset, I note that the issue of the legality of the initial stop was not waived, because at the request of the trial court at the close of the suppression hearing, Rodriguez submitted a brief specifically challenging the use of the computer system to justify the initial stop. The State was invited to do the same. At the hearing, the State did call the arresting officer to the stand, and the officer testified as to his basis for initiating the stop. The issue was ruled upon by the trial court, and the State does not show how it was prejudiced by any alleged lack of notice about Rodriguez's challenge to the investigatory stop. Therefore, we should decide the issue.

There is no dispute with respect to the facts surrounding the stop; however, it is clear from the officer's testimony that his sole basis for initiating the investigatory

stop was that he received an alert identifying Rodriguez's vehicle.[1] He testified

explicitly that he did not attempt to take any steps to verify the information in the

alert or confirm that the occupants of the vehicle matched the information given to

him in the alert.

Rodriguez correctly points out the undisputed facts that she was not observed

to have committed a traffic violation nor was she subject to arrest pursuant to a

warrant.

> In *Delaware v. Prouse*,[2] the United States Supreme Court held that
> stopping a vehicle and detaining the driver to check his driver's license
> and registration is unreasonable under the Fourth Amendment, unless
> there exists an articulable and reasonable suspicion that the driver is
> unlicensed, the vehicle is unregistered, *or the driver [or occupant] or
> vehicle is otherwise subject to seizure for violation of the law*. We have
> observed that articulable suspicion must be an objective manifestation
> that *the person stopped* is, or is about to be, engaged in criminal activity.
> That determination can only be made after considering the totality of the
> circumstances or the whole picture. Based upon that whole picture, the

---

[1] It is notable that the officer did not run a computer check on the license plate to determine registration until after he pulled over the vehicle. Having done that, he was informed that the vehicle was registered to Rodriguez and not the Enrique Sanchez identified in the alert.

[2] 440 U.S. 648 (99 SCt 1391, 59 LE2d 660) (1979).

detaining officers must have a particularized and objective basis for suspecting *the particular person stopped* of criminal activity.[3]

According to the officer's testimony, the database system used here will alert an officer to a wanted person, regardless of whether or not the identified vehicle is registered to that person. Thus, the system will associate the wanted person with a vehicle based on the person's one-time use of that vehicle, and the officer has no way of knowing the extent of the person's relationship to the vehicle in question. If the officer takes no steps to further verify the alert, this results in an overbroad detention of individuals even though the flagged vehicle is not registered to a wanted person; the vehicle does not exhibit a registration or ownership problem; and the driver is otherwise operating the vehicle in full compliance with traffic laws.[4]

This overbreadth is exemplified by the present scenario in which the wanted person was a male and the vehicle was occupied by two females. The officer specifically testified that he made the stop based on the alert in the system alone,

---

[3] (Punctuation omitted; emphasis supplied.) *Humphreys*, 304 Ga. App. at 366.

[4] Compare with *Wright v. State*, 272 Ga. App. 423, 427 (2) (612 SE2d 576) (2005) (holding that an officer's observation of a "driver breaking even a relatively minor traffic law" will support a traffic stop and "a motion to suppress under the Fourth Amendment arguing that the stop was pretextual must fail.") (punctuation omitted).

3

without making any further effort to confirm the result or observe the general identity of the vehicle's occupants, and he observed no suspicious circumstances or traffic violations by the vehicle.[5] He explained that the system did not indicate that the vehicle was registered to the wanted person, but only "that the [wanted] individual had the warrant based off of driving . . . the vehicle that that person got the citations [in] or made the violation [in] and to where they did not appear in court." In light of this factual scenario, and in the absence of evidence that the officer made any effort to confirm the gender or general description of the driver, the tenuous relationship between vehicle and wanted person could not alone support a reasonable suspicion that *the particular person stopped*, Rodriguez, was subject to arrest or engaged in criminal activity.[6]

---

[5] It is notable that the officer did not run a computer check on the license plate to determine registration until after he pulled over Rodriguez. After he ran the check, he was informed that the vehicle was registered to Rodriguez and not Enrique Sanchez identified by the alert.

[6] See *State v. Dixson*, 280 Ga. App. 260, 263-264 (633 SE2d 636) (2006) (holding that police lacked reasonable suspicion when relying solely on an "unknown" status notation in the automobile insurance database, relying in part on OCGA § 40-6-10 (b)); *Duke v. State*, 257 Ga. App. 609 (571 SE2d 414) (2002) (suspicion must amount to more than a hunch or generalized report of suspicion).

4

I note the apparent similarity between this case and another, *Hernandez-Lopez*,[7] in which we held that an officer was authorized to stop a vehicle based on an automated license plate reader system. But in that case, the officer took an additional step to confirm that at least the gender and the general age of the person stopped matched those of the wanted person, and this additional step was an explicit part of this Court's holding in that case.[8] Here, by contrast, the officer explicitly testified that he took no steps to verify age or gender and he made the stop based solely on the fact that he received an alert on the license plate reader system. Thus, the facts of this case distinguish it from cases such as *Hernandez-Lopez*, where the police took an extra confirmatory step,[9] as well as those such as *Humphreys*, where the vehicle's

---

[7] __ Ga. App. __ (Case No. A12A1715; decided Feb. 5, 2013).

[8] See *Hernandez-Lopez*, __ Ga. App. at *2, *5 (1) .

[9] Each of the cases collected in *Hernandez-Lopez*, __ Ga. App. at __ n. 12 involve some additional confirmatory step taken by police (e.g., shining a light on the driver to confirm gender and race) or some other factual circumstance (e.g. facial problem with vehicle registration) giving rise to suspicion. See *People v. Davila*, 27 Misc. 3d 921, 901 N.Y.S.2d 787, 791 (N.Y. Sup. 2010) (suspended registration); *United States v. Lurry*, Case No. 09-20312-JPM-dkv, 2010 U. S. Dist. LEXIS 118456, at *15, 2010 WL 4628178, at *6 (II) (A) (W.D. Tenn. June 23, 2010) (alert indicated that the "driver of the vehicle" had a warrant and the officer verified the race and gender of the driver prior to the stop), adopted in part and rejected in part on other grounds, Case No. 2:09-cr-20312-JPM, 2010 U. S. Dist. LEXIS 118494, at *13, 2010 WL 4628129, at *5 (III) (b) (W.D. Tenn. Nov. 8, 2010). For a case in which the police conceded that a database alert does not alone automatically support a vehicle

registered *owner* (not merely someone observed driving the vehicle on one occasion) had a suspended license and the officer verified that the gender of the driver matched the owner's before executing the stop.[10]

This case is likewise distinct from other computer check cases in which the system on its face indicates a registration problem or a stolen vehicle. For example, in *Schweitzer v. State*,[11] this Court held that a vehicle stop was authorized when a computer check indicated that the tag was issued to a different make and model vehicle. Likewise, in *Thompson v. State*,[12] we concluded that a vehicle stop was authorized when an officer "randomly checked [the defendant's] vehicle's tag and learned that the tag on the vehicle was registered to a different vehicle.[13]

---

stop and detailing additional steps taken by police to confirm database alerts, see *Green v. City & County of San Francisco*, Case No. C 10-02649 RS, 2011 U. S. Dist. LEXIS 108617, 2011 WL 4434801, at *13 (III) (A) (N.D. Cal. Sept. 23, 2011).

[10] *Humphreys*, 304 Ga. App. at 365.

[11] __ Ga. App. __ (Case No. A12A2222; decided Feb. 21, 2013).

[12] 289 Ga. App. 661, 661 (658 SE2d 122) (2007).

[13] See also *Self v. State*, 245 Ga. App. 270, 274 (3) (537 SE2d 723) (2000) (holding that a vehicle stop was justified when an officer testified that "he checked [a car's] license tag prior to stopping it and determined that the tag belonged to a pickup truck" because "the potential violation of OCGA § 40-2-6 supported the stop of the vehicle").

In contrast to those cases, the computer alert here did not on its face identify a registration violation nor did it indicate that the *owner* of the vehicle was subject to an active warrant. Therefore, in the absence of any observed violation or any effort to verify that the particular person stopped was subject to an active warrant, the officer here lacked authority to stop Rodriguez. Accordingly, I believe the trial court erred by denying Rodriguez's motion to suppress.

I am authorized to state that Chief Judge Ellington, Presiding Judge Phipps, and Judge McFadden join in this dissent.

A12A2397.  RODRIGUEZ v. THE STATE.


DILLARD, Judge, dissenting.

Like the per curiam, I am of the view that Rodriguez's motion to suppress failed to provide the State with notice of *all* the legal issues to be resolved at the suppression hearing.[1] Nevertheless, the trial court did, at the conclusion of that hearing, provide the parties with an opportunity to file post-hearing briefs on the validity of the stop. As such, I am not inclined to conclude that the issue of whether the initial stop of the vehicle was valid has been waived on appeal. That said, I do think Rodriguez's failure to give the State pre-hearing notice as to the scope of the legal issues to be presented at the suppression hearing provides a justification for vacating the trial court's decision and remanding the case for further proceedings.[2] This course of action is especially appropriate in light of our recent decision in

---

[1] *See Young v. State*, 282 Ga. 735, 736-38 (653 SE2d 725) (2007); *State v. Gomez*, 266 Ga. App. 423, 425 (2) (597 SE2d 509) (2004).

[2] *See State v. Roddy*, 231 Ga. App. 91, 93 (497 SE2d 653) (1998) (concluding that the circumstances of that case demanded that "a second evidentiary hearing be held," and thus vacating the trial court's order granting defendant's motion to suppress and remanding the case with direction that the trial court conduct another hearing on the motion). *Cf. State v. Watson* 292 Ga. App. 831, 833 (666 SE2d 90) (2008) ("Given the uncertainty regarding the basis for the ruling, we vacate the order granting Watson's motion to suppress and remand the case to the trial court.").

*Hernandez-Lopez v. State*,[3] which was decided *after* both the trial court's ruling and the filing of Rodriguez's notice of appeal,[4] and which has not been briefed (or even mentioned) by the parties on reconsideration.

Furthermore, while the per curiam and Judge Doyle have both penned thoughtful opinions, our constitutional duty to resolve this appeal today—and thus within two terms of docketing[5]—places time constraints upon the reconsideration of this case that also warrant vacating and remanding to the trial court.[6]

---

[3] __ Ga. App. __ (738 SE2d 116) (Feb. 5, 2013).

[4] *See, e.g.*, *Kollie v. State*, 301 Ga. App. 534, 547 (15) (687 SE2d 869) (2009) (vacating and remanding case for the purpose of conducting a new hearing and considering new precedent).

[5] Ga. Const. art. VI, § 9, ¶ 2 ("The Supreme Court and the Court of Appeals shall dispose of every case at the term for which it is entered on the court's docket for hearing or at the next term.").

[6] In referencing the time constraints placed upon the Court in this case, I am not only referring to the limited amount of time that many members of the Court had to consider the complex issues presented by this appeal, but also to the fact that our decision to adopt this new, substituted opinion precludes Rodriguez from filing a motion for reconsideration. And while I recognize that this Court has, in the past, claimed the authority to extend the term for purposes of allowing a party to file a motion for reconsideration in such circumstances, *see Stuckey v. Richardson*, 188 Ga. App. 147, 149 (4) (372 SE2d 458) (1988), I strongly disagree that this Court possesses the authority to do so. Our Supreme Court has this authority, but we do not. *See* OCGA § 15-2-4 (b); *Haygood v. City of Doraville*, 256 Ga. 566, 567 (350 SE2d 766) (1986).

2

For all of the foregoing reasons, I respectfully dissent.