**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 17, 2017**

# In the Court of Appeals of Georgia

A16A1813. THE STATE v. MARTINEZ-ARVEALO.                    DO-060 C

DOYLE, Chief Judge.

Gerardo Martinez-Arvealo was charged with driving without a license[1] after a traffic stop precipitated by an officer's check of the vehicle's license plate. Martinez-Arvealo filed a motion to suppress, arguing that the officer had no reasonable articulable suspicion to stop him despite the fact that the officer's license plate check returned information that the owner of the vehicle, who was not the same gender as Martinez-Arvealo, was not a licensed driver. The trial court granted the motion to suppress, and the State appeals this order. For the reasons that follow, we affirm.

---

[1] OCGA § 40-5-29.

When reviewing a trial court's ruling on a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that the reviewing court generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous . . . . Viewed in this way, the evidence at the suppression hearing . . . shows the following.[2]

Officer Tabitha Denson was parked beside a four-way stop at approximately 10:30 p.m. one evening when a vehicle driven by Martinez-Arvealo came to the stop. The officer explained that she often parked her patrol car in a church lot beside the four-way stop to run license plates. The officer ran the license plate number in her cruiser's computer, and it returned as being registered to an unlicensed owner, Laura Patricia Guadarrama Martinez. The officer explained that the computer system returns information on the owner, including name, which she testified was "clearly" a female name in this instance. Officer Denson testified that "[m]ost times we don't go that far [to look at the owner's name or gender.]" She initially testified "that the information [about the driver's gender] would have been on the computer, but [she] [couldn't] say

---

[2] (Citation and punctuation omitted.) *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015), quoting *Hughes v. State*, 296 Ga. 744, 746 (770 SE2d 636) (2015).

that at this time [whether she] knew . . . if [she] looked at the identity, like the gender, of who was actually driving."

Although there is a light at the four-way stop, Officer Denson testified that at that time of night "you can't see the driver of a vehicle clearly." She followed the vehicle after it left the stop, and after the results of the license plate scan came back, she pulled the vehicle over. The officer approached the vehicle, which was occupied by a male driver, later learned to be Martinez-Arvealo, and he presented an international identification card but could not show that he was licensed to drive in the state.

In its order, the trial court found that although the officer was presented with the gender of the unlicensed owner associated with the license plate search, the officer did not attempt to ascertain the driver's gender prior to proceeding to stop the vehicle even though there was some lighting in the area. Because of these failures, the trial court found that the officer lacked a reasonable articulable suspicion for continuing the stop based on the results of the license plate search revealing an unlicensed owner of the vehicle.

The State appeals, arguing that the trial court erred by granting the motion to suppress because an officer does not have a duty to corroborate the gender of the

3

driver with the gender of the owner prior to effectuating a traffic stop based on a report of prior violation of the law connected to that owner.

As an initial matter, we note that the word "duty" is found in the trial court's summary of the defendant's argument and is not a term used by the trial court in announcing its opinion. Instead, the trial court's analysis is conducted under the reasonable articulable suspicion standard.

> [A] brief investigative stop of a vehicle is justified "when an officer has a reasonable and articulable suspicion that the driver or vehicle is subject to seizure for violation of the law." In this regard, we have held that reasonable and articulable suspicion must be "an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and that this determination can only be made after considering the totality of the circumstances." And in viewing the totality of the circumstances, the officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting the particular person stopped of criminal activity."[3]

---

[3] (Footnotes omitted.) *Lewis v. State*, 323 Ga. App. 709, 711 (747 SE2d 867) (2013).

In support of its argument, the State cites to this Court's opinions in *Hernandez-Lopez v. State*[4] and *Humphreys v. State*.[5] In *Humphreys*, the suppression hearing showed that the officer checked a vehicle license plate and discovered that the owner of the vehicle "was male and had a suspended driver's license."[6] In that case, prior to effectuating a stop of the vehicle, the officer observed that the driver was male.[7] This Court reasoned that the stop was authorized because the officer had a "particularized and objective basis for the initial stop [based on the] information from [Georgia Crime Information Center] — in this case, that the male owner of the registered vehicle Humphreys operated had a suspended driver's license."[8]

In *Hernandez-Lopez*, this Court addressed the issue of whether an officer lacked a reasonable articulable suspicion to support a stop of a vehicle based on an

---

[4] 319 Ga. App. 662 (738 SE2d 116) (2013).

[5] 304 Ga. App. 365 (696 SE2d 400) (2010). This Court did not address "the issue of whether officers are authorized to use the Georgia Crime Information Center computers for random checks of the status of vehicles or drivers who are otherwise lawfully driving on the roadway because that issue was not raised below." Id. at 366, n.1.

[6] 304 Ga. App. at 365.

[7] See id.

[8] Id. at 367.

alert from the officer's on-board license plate reader, which notified the officer that the vehicle was linked to an individual with an outstanding warrant.[9] The facts in that case showed that the officer received a wanted-person alert for a male driving a specific vehicle, and the officer confirmed prior to conducting the stop that the driver was "an adult male."[10]

Neither of those cases, however, address a situation in which the officer had or easily could have had knowledge of the discrepancy between the gender of the unlicenced owner as shown in the license plate search and the observed driver of the vehicle.

Here, the trial court found that the officer lacked a *reasonable* articulable suspicion for making the stop because she completely failed to note the unlicensed owner's name and gender as listed in the license plate search report, and she made no attempt to observe the driver's gender prior to the stop, even though, as the court specifically noted in its order, there was a light at the intersection. Based on the evidence presented at the hearing on the motion to suppress, there is no clear error in the trial court's findings.

---

[9] See *Hernandez-Lopez*, 319 Ga. App. at 662.

[10] See id. at 662.

[W]hen deciding whether to grant or deny a motion to suppress, a trial court sits as the trier of fact, and its findings are akin to a jury verdict and will not be disturbed unless no evidence exists to support them. Accordingly, we cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision.[11]

It is clear from the language used in the order that the trial court found the officer's testimony questionable. And while the trial court could have accepted the officer's testimony that she was wholly unable to observe the driver's gender prior to the stop, and based on such credited testimony, the trial court could have determined that the officer had reasonable articulable suspicion to effectuate the stop, the trial court was not required to do so.

---

[11] (Footnotes and punctuation omitted.) Id. at 663.

Accordingly, based on our standard of review, and the current law of this State,[12] we discern no error in the trial court's grant of Martinez-Arvealo's motion to suppress.

*Judgment affirmed. Andrews and Ray, JJ., concur.*

---

[12] Compare with *People v. Cummings*, __ Ill. __ (46 NE3d 248) (2016) (on remand from the United States Supreme Court after its decision in *Rodriguez v. United States*, 575 U. S. ___ , ___ (135 SCt 1609) (191 LE2d 492) (2015), holding that an officer can ask for a driver's identification because initial stop based on a license plate search returning a female unlicensed owner was valid and officer could not discover until approaching the stopped vehicle that the driver was male). See also *State v. Candelaria*, 149 N. M. 125, 129 (A) (245 P3d 69) (2011) (collecting cases showing that a majority of jurisdictions presume that the owner of the vehicle is operating the vehicle "absent additional facts suggesting otherwise," and therefore return of a license plate check showing the owner is unlicensed or has an outstanding warrant constitutes reasonable articulable suspicion under normal circumstances).