**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 15, 2020**

# In the Court of Appeals of Georgia

A20A1465. VALLES v. THE STATE.
A20A1466. DE LA CRUZ v. THE STATE.

REESE, Presiding Judge.

Following a joint bench trial, Abigail Valles and Rafael De La Cruz appeal the denial of their motions for new trial that sought to grant their motions to suppress. Valles and De La Cruz were convicted of one count each of trafficking methamphetamine.[1] Both Valles and De La Cruz argue that the trial court erred in denying their motions to suppress evidence obtained during a traffic stop. Because these appeals involve essentially the same facts and questions of law, we consider them together. For the reasons set forth infra, we reverse the trial court's decision and remand.

---

[1] See OCGA § 16-13-31.

On appeal from a denial of a motion to suppress, this court must construe the evidence most favorably to uphold the ruling of the trial court. Furthermore, the trial court's application of law to undisputed facts is subject to de novo review. We may examine not only the evidence in the record of the hearing on the suppression motion, but also the evidence from the trial. However, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. . . The trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous.[2]

So viewed, the evidence showed the following facts. On April 15, 2017, Investigator Vic McPhie and Investigator Aaron Howard, both with the Newnan Police Department, were in a marked police vehicle in a Walmart parking lot in Coweta County. The investigators were watching the Walmart parking lot due to recent criminal activity of persons illegally entering vehicles in the area.

McPhie testified that he and Howard had received information that other "entering auto incidents" had occurred in the area. McPhie further testified that the "average person usually goes into the store[,]" whereas individuals that break into vehicles usually "jump from parking lot to parking lot in different areas." He further testified that he saw a silver sport utility vehicle ("SUV") in the parking lot driven by

---

[2] *Crider v. State*, 336 Ga. App. 83, 84 (1) (783 SE2d 682) (2016) (punctuation and citations omitted).

a male, and containing a female passenger. McPhie testified that occupants of the silver SUV "appeared to be [engaged in the] criminal activity [of] entering autos."

While watching the Walmart parking lot, the investigators noticed that the small silver SUV was moving around to different parking spaces, and that the occupants were looking around the parking lot. Howard testified that for 30-40 minutes, the investigators watched the vehicle move from parking space to parking space, drive around the backside of Walmart "erratically[,]" drive behind an adjacent business, and that no one entered or exited the SUV during that time.

McPhie testified that he witnessed the silver SUV drive four routes in various parts of the parking lot. McPhie further testified that based on his "knowledge, training and experience of [the silver SUV] moving from parking space to parking space around the businesses consistently, there could have been other individuals tied in with them located in this parking lot. They could have been the look-out."

Both investigators testified that the movements of the SUV in the parking lot were suspicious. After the vehicle turned around behind another business in the parking lot and began moving, the Investigators activated the police vehicle's blue emergency lights, and conducted a traffic stop of the SUV.

After stopping the SUV, McPhie approached the driver (later identified as De La Cruz), and asked for his license. McPhie testified that De La Cruz told him that he was not carrying his license. During his conversation with De La Cruz, McPhie noticed that the driver spoke very fast while the female passenger (later identified as Valles), "looked straight ahead[ ]" and did not pay attention to McPhie. McPhie then asked De La Cruz to step out of the SUV. After De La Cruz stepped out of the SUV, he told Howard that he "wanted to make a deal." De La Cruz gave the investigators permission to search the vehicle. Howard testified that upon searching the vehicle, the Investigators found a "large quantity of methamphetamine[.]" McPhie testified that Valles told him that she and De La Cruz were traveling from Texas to Georgia to deliver methamphetamine.

At the motion to suppress hearing, McPhie testified that De La Cruz's driving did not violate any state laws and he would not have written De La Cruz a ticket for driving in that area. McPhie further testified that he was unaware before the investigators stopped the vehicle that there were illegal drugs in the SUV.

Following the suppression hearing, which was held about three months prior to the bench trial, the trial court denied both motions filed by Valles and De La Cruz. After the bench trial, these appeals followed.

4

Turning to the claims of error by both Valles and De La Cruz, they argue that the trial court erred in denying their motion to suppress because the stop of their vehicle was not based on reasonable, articulable suspicion. Specifically, both contend that the stop of their vehicle was based on "unparticularized suspicion" or a "hunch[.]"

In its ruling, the trial court noted that Investigator McPhie's observations of the silver SUV over approximately 30 minutes created sufficient reasonable, articulable suspicion to stop the vehicle. The trial court, citing *Proctor v. State*,[3] also noted that "the stop of a vehicle is also authorized merely if the officer observed a traffic offense."

Our precedent makes it clear that the "brief investigative stop of a vehicle is justified when an officer has a reasonable and articulable suspicion that the driver or the vehicle is subject to seizure for the violation of the law."[4] Further, the reasonable and articulable suspicion must be

> an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity, and . . . this determination can only be

---

[3] 298 Ga. App. 388, 390 (1) (680 SE2d 493) (2009).

[4] *Lewis v. State*, 323 Ga. App. 709, 711 (747 SE2d 867) (2013) (punctuation and footnote omitted).

5

made after considering the totality of the circumstances. And based upon this holistic approach, the detaining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.[5]

Here, neither investigator provided the specific, articulable facts that rose to the level of reasonable suspicion of criminal activity. "[A] person's mere presence in a high crime area does not give rise to reasonable suspicion of criminal activity, *even if police observe conduct which they believe consistent with a general pattern of such activity*."[6]

McPhie testified that he observed the vehicle driven by De La Cruz travel four different routes around the Walmart parking lot in the span of about 30 minutes in an area where vehicles had been recently entered into illegally. Although McPhie

---

[5] *Hernandez-Lopez v. State*, 319 Ga. App. 662, 663-664 (1) (738 SE2d 116) (2013) (punctuation and footnotes omitted).

[6] *Adkinson v. State*, 322 Ga. App. 1, 3 (743 SE2d 563) (2013) (citation omitted; emphasis supplied) (officer's belief that the defendant was involved in criminal activity because the defendant briefly visited a motel located in a high drug area and his visit was "consistent with drug activity," was not reasonable articulable suspicion); cf. *Smith v. State*, 204 Ga. App. 576 (1) (420 SE2d 29) (1992) (reasonable articulable suspicion existed where a law enforcement officer observed the van driven by the defendant slide off the highway into private property, the officer followed the vehicle because he suspected that the van had "mechanical difficulties," and the officer had difficulty getting the van to stop after turning on his blue lights and sirens).

testified that based on his knowledge and expertise, the behavior of De La Cruz and Valles while in the Walmart parking lot appeared to be consistent with the criminal activity of entering autos, he did not provide a particularized suspicion that reasonably warranted stopping their vehicle.[7] McPhie merely observed the vehicle containing Valles and De La Cruz traveling around a parking lot known for criminal activity of entering autos and parking in different parking spaces, and McPhie testified that no one entered or exited their vehicle. Further, McPhie testified that the silver SUV did not violate any state laws.

> [W]here no circumstances at all appear which might give rise to an articulable suspicion (less than probable cause, but greater than mere caprice) *that the law has been violated*, the act of following and detaining a vehicle and its occupants must be judged as an impermissible intrusion on the rights of the citizen. Where this occurs, the penalty exacted by the law is that evidence turned up as a result of

---

[7] Compare *Thomas v. State*, 331 Ga. App. 641, 655 (3) (771 SE2d 255) (2015) (particularized suspicion found where the officer patrolling an apartment complex knew of several reports that the defendant's car was in the complex parking lot several times over the last week, the car's driver had been seen sitting in the car without going into or out of any of the apartment buildings, the driver had been sitting in the car on the date of criminal activity in the complex without any apparent business at the property, and the driver appeared to leave when he saw the police car).

such intrusion may not be introduced against the defendant[s] on the trial of [their] case[s].[8]

It follows that under the totality of circumstances based on the driving pattern of the vehicle, although the investigators were justified in observing the vehicle, there was insufficient information to indicate that either Valles or De La Cruz were engaged in *illegal* activity so as to provide a reasonable, articulable suspicion to justify the stop.[9] Thus, the motions to suppress evidence uncovered at the traffic stop should have been granted and the trial court erred in denying the motions for new trial. We remand these cases to the trial court to proceed in a manner consistent with this consolidated opinion.

*Judgments reversed and case remanded. Markle, J., concurs. Colvin, J., dissents.*

---

[8] *Brooks v. State*, 129 Ga. App. 109, 111-112 (198 SE2d 892) (1973) (punctuation omitted; emphasis supplied).

[9] See *Hughes v. State*, 269 Ga. 258, 261 (1) (497 SE2d 790) (1998) ("no objective manifestation" that criminal activity occurred, or was a prelude to such activity merely because a white male drove in a predominately black neighborhood late at night, picked up a black male in a high-crime area, and drove slowly in a circular pattern through the area); *Williams v. State*, 327 Ga. App. 239, 244 (758 SE2d 141) (2014) ("Georgia case law is clear that, absent some particularized suspicion of wrongdoing, merely acting in a way that fits a known 'pattern' of criminal activity — does not justify an investigatory stop.") (citations and punctuation omitted).

A20A1465. VALLES v. THE STATE.
A20A1466. DE LA CRUZ v. THE STATE.

COLVIN, Judge, dissenting.

The officers who conducted the investigatory stop of these defendants' vehicle testified that they observed them driving around a large shopping center parking lot for at least 30 minutes without ever leaving the car, which the officers found consistent with a plan to break and enter autos in an area where that crime had just been reported. The trial court explicitly found the officers' testimony credible, and we have no authority to substitute our judgment for that of the trial court on the matter. Because the trial court therefore did not err when found that the officers had a reasonable and articulable basis for conducting their investigatory stop, I dissent.

As a preliminary matter, I note that the majority's standard of review, while technically correct, is subject to misinterpretation. Although it is true that "the trial

court's application of law to undisputed facts is subject to de novo review," *Crider v. State*, 336 Ga. App. 83, 84 (783 SE2d 682) (2016),[1] the evidence at issue here is the testimony of the two arresting officers, who were the only witnesses at the hearing on defendants' motion to suppress. "'Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony.'" *Hughes v. State*, 296 Ga. 744, 747 (1) (770 SE2d 636) (2015), quoting *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994). The standard of review appropriate to this case, which turns on the trial court's unqualified acceptance of the officers' testimony, should therefore follow the "three fundamental principles" articulated by the Supreme Court of Georgia:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his

---

[1] "In some cases, [for example,] some or all of the material facts may be undisputed, as where the defendant concedes a fact unhelpful to his cause in his motion to suppress, where the State admits a fact unhelpful to its case in connection with the motion, or where the State and defendant expressly stipulate to a fact. In such cases, an appellate court properly may take notice of the undisputed facts – even if the trial court did not – without interfering with the prerogative of the trial court to resolve disputes of material fact." *Hughes*, 296 Ga. at 746 n. 4 (1).

findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

*Miller v. State*, 288 Ga. 286, 287 (1) (702 SE2d 888) (2010); see also *Hughes*, 296 Ga. at 746 (1).

When examined under this standard of review, we must affirm the judgment of the trial court. Its order on defendants' motion for new trial emphasized its status as the trier of fact and made the following findings: (1) the officers knew that car break-ins had occurred that day in the area; (2) the defendants moved "in and out" of individual spaces and wider areas of the lot "while looking around," and also drove "to and from the front and back" of the lot; (3) the officers' experience was that individuals seeking to break into cars often "jump between parking lots to hit different vehicles"; and (4) the officers observed the defendants drive around in this way for "approximately 30 minutes" before making an investigatory stop. Based on this testimony, the trial court found that the officers had "sufficient [and] articulable suspicion" to conduct a brief investigatory stop of the car.

3

The trial court gave no indication that it disbelieved any portion of the officers' testimony. As the majority properly notes, that testimony also showed that no person exited the vehicle during the 30 or more minutes of the officers' observation, whereas "the average person usually [parks and] goes into the store"; that the officers saw the vehicle drive all over the large parking lot, including trips behind a Lowe's, a Wal-Mart, and other businesses, and in disregard of a sign barring unauthorized vehicles behind the Wal-Mart; and that the defendants drove "erratically," as when they passed in front of the Lowe's lawn and garden department four times. The evidence also showed that one of the passengers looked "dead at" one of the officers just before the car drove behind a restaurant and made a u-turn. On the basis of all these circumstances, the officers made the reasonable inference, which the trial court accepted, that the defendants were "casing" the parking lot in preparation for committing the crime of entering cars illegally, which had been reported in the area earlier that day and had prompted the officers' visit, and were trying to evade detection. Shortly after the investigatory stop began, Cruz stated that he wanted to "make a deal" with the officers and gave his consent to a search of the car, which yielded a "large quantity" of methamphetamine.

4

Our law is clear that even in the absence of evidence authorizing a stop to investigate a traffic violation, officers may conduct a brief investigatory stop of a vehicle if they have knowledge of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citation and punctuation omitted.) *Thomas v. State*, 331 Ga. App. 641, 654 (3) (771 SE2d 255) (2015).

> [T]he officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. Facts supporting such a suspicion can include an officer's objective observations, information received from police reports, and consideration of the modes or patterns of operation of certain kinds of lawbreakers, as well as the officer's experience and training, which allows him to draw inferences and deductions that might well elude an untrained person.

*Lindsey v. State*, 287 Ga. App. 412, 414 (651 SE2d 531) (2007), citing *State v. Ledford*, 247 Ga. App. 412, 415-416 (1) (b) (543 SE2d 107 (2000) (physical precedent only, but followed in *Lindsey*). Of course, the fact that a crime is later discovered does not in itself justify an initial stop. See *State v. Causey*, 246 Ga. App. 829, 833 (1) (b) (540 SE2d 696) (2000).

The majority cites law to the effect that "mere presence in a high crime area does not give rise to reasonable suspicion," even when police observe conduct

5

consistent with criminal activity. See *Hernandez-Lopez v. State*, 319 Ga. App. 662 663-664 (1) (738 SE2d 116) (2013); *Adkinson v. State*, 322 Ga. App. 1, 3 (743 SE2d 563) (2013). As an abstract statement of law, this is correct. In *Hernandez-Lopez*, however, we found that an alert on the license of a driver for a failure-to-appear warrant *did* provide police with reasonable and articulable suspicion to perform an investigatory stop. 319 Ga. App. Id. at 664 (1) (affirming denial of motion to suppress). Further, the defendant in *Adkinson* simply visited a motel room "for a few minutes," which without more could not justify his detention, whereas these defendants were observed for at least half an hour engaged in behavior consistent with a crime just reported in the area. Compare *Adkinson*, 322 Ga. App. at 3-4.

In short, and even assuming that the circumstances observed by the officers were "susceptible to an innocent explanation," they were "also consistent with [the] illegal activity" of breaking and entering parked cars, reports of which had drawn police to the area. See *Lindsey*, 287 Ga. App. at 414; *Causey*, 246 Ga. App. at 833 (1) (b) (where conduct "was by itself lawful," but "also suggested that the individuals were engaged in criminal activity," officers may detain individuals briefly "to resolve the ambiguity") (citation and punctuation omitted). On this record, and as this Court has often held, these officers possessed reasonable suspicion sufficient to justify an

6

investigatory stop. *Thomas*, 331 Ga. App. at 655 (3) (affirming denial of motion to suppress when officer knew of reports that defendant's car had been in a parking lot several times in the course of a week, when the driver had been sitting in the car without any apparent business there, and when the driver left at the approach of police); *Causey*, 246 Ga. App. at 832-833 (1) (b) (officers had reasonable, articulable suspicion to stop a defendant who was seen looking into parked cars in an area where there was theft from a vehicle the previous night, and who fled when he saw police); *Ledford*, 247 Ga. App. at 415-416 (1) (b) (a "lack of apparent purpose" for defendants' actions in meeting and using a bathroom at a convenience store, "the consistency such actions had with drug sale activity," and the fact that the store was a "frequent drug crime locale" provided "sufficient reasonable articulable suspicion to support a brief detention").

For these reasons, I believe that the trial court did not err when it denied the motions to suppress, and I therefore dissent.