**THIRD DIVISION**
**ELLINGTON, P. J.**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 7, 2016**

# In the Court of Appeals of Georgia

A15A1922. CRIDER v. THE STATE                                    PE-037C

PETERSON, Judge.

Troy Crider appeals from a jury verdict finding him guilty of trafficking in methamphetamine and possession of drug-related objects. He argues that (1) the trial court erred in denying his motion to suppress; (2) the evidence is insufficient to sustain his trafficking conviction; (3) the trial court erred in not giving certain jury instructions; and (4) the trial court erred in denying his motion for a new trial based on alleged ineffective assistance of counsel. The trial court did not err in denying Crider's motion to suppress evidence found during a traffic stop of a vehicle in which Crider was a passenger, as the officer did not unreasonably prolong the detention before obtaining the driver's consent to search. The trial court also did not err in denying the motion to suppress evidence obtained during a search of a motel room,

as the court's factual finding that the search was conducted pursuant to a warrant is not clearly erroneous. The evidence is sufficient to sustain Crider's convictions, as the testimony of Crider's accomplice was corroborated independently. The trial court did not err in failing to instruct the jury on presumption of possession and equal access, as the State did not rely on a presumption of possession by Crider. Finally, the trial court did not err in rejecting Crider's claims that his trial counsel's performance amounted to ineffective assistance of counsel, because the various actions or omissions by counsel of which Crider complains did not fall below a reasonable standard of representation or did not prejudice Crider's defense. Therefore, we affirm Crider's convictions.

Crider was a passenger in a car that was stopped by police. After some investigation of the sobriety of the driver, Buffie Douglas, police obtained her consent to search the vehicle. Finding methamphetamine under the seat where Crider had been sitting, police arrested both Crider and Douglas. Acting on information provided by Douglas, police searched a motel room, to which Crider had a key card on his person, finding additional methamphetamine and drug-related paraphernalia. Based on the two seizures and other evidence, including testimony for the prosecution by Douglas, Crider was prosecuted and convicted for trafficking in methamphetamine

and possession of drug-related objects. We will address his appellate arguments as to the legality of the searches and seizures before considering his sufficiency argument, noting that different standards of review govern each inquiry.

1.   Crider challenges the trial court's denial of his motion to suppress evidence seized (1) during a stop of a vehicle in which he was a passenger and (2) in a subsequent seizure during a search of a motel room. "On appeal from a denial of a motion to suppress, this court must construe the evidence most favorably to uphold the ruling of the trial court. Furthermore, the trial court's application of law to undisputed facts is subject to de novo review." *Thomas v. State*, 300 Ga. App. 120, 120 (684 SE2d 290) (2009) (footnotes omitted). We may examine not only the evidence in the record of the hearing on the suppression motion, but also the evidence from the trial. *Owens v. State*, 334 Ga. App. 203, 205 (1) (778 SE2d 830) (2015) (citation and internal punctuation omitted). However, "when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts . . . [T]he trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." *Perez v. State*, 249 Ga. App. 399, 399-400 (547 SE2d 699) (2001) (citation omitted). The reviewing court may also consider facts indisputably

3

discernable from a videotape, as is available with respect to the traffic stop in this case. *State v. Allen*, 298 Ga. 1, 2 (1) (a) (779 SE2d 248) (2015).

(a)     So viewed, the record shows that an officer observed the car driven by Douglas make a "rough movement" from the right lane into the left lane then swerve back into the right lane. The officer initiated a traffic stop, approached Douglas, and asked for her driver's license. The officer asked Douglas to step out of the car, questioned her about her travels that evening and whether she had consumed any alcohol or drugs, and checked the status of her driver's license and registration.[1] The officer also asked Crider for his identification and questioned him about his travels. After conducting some sobriety tests on Douglas, the officer told her that her eyes were red but he did not smell any alcohol. The officer asked Douglas whether she had consumed any drugs or was on any prescription medications, or had anything illegal in the vehicle. Immediately thereafter, about eight minutes after the traffic stop began, the officer requested and was granted Douglas' permission to search the vehicle. Before searching the car, the officer spoke to Crider again, asked him to exit the vehicle, and patted him down. Finding what was later determined to be

---

[1] It is unclear from the video how Douglas performed on those tests, although she appeared to pass a test involving recitation of the alphabet. The trial court made no findings on that point.

4

methamphetamine under the front passenger seat where Crider had been sitting, the officer told Douglas and Crider that they were under arrest, about 10 minutes after the stop began. In an oral ruling, the trial court denied the motion to suppress evidence gathered from the traffic stop.

Valid consent to search eliminates the need for either probable cause or a search warrant. *Brooks v. State*, 285 Ga. 424, 425 (677 SE2d 68) (2009). However, consent cannot validate a search if the consent is the product of a wrongful detention. *State v. Lanes*, 287 Ga. App. 311, 313 (651 SE2d 456) (2007). A passenger may indirectly challenge the search of a vehicle on the basis that the search is a fruit of his own illegal detention. *State v. Menezes*, 286 Ga. App. 280, 281-82 (1) (648 SE2d 741) (2007). Although there is no dispute in this case that the initial traffic stop was valid, "a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Duncan v. State*, 331 Ga. App. 254, 255-56 (770 SE2d 329) (2015) (*quoting Illinois v. Caballes*, 543 U.S. 405 (125 S. Ct. 834, 160 LE2d 842) (2005)).

A stop that extends beyond the conclusion of the investigation that warranted the detention in the first place is unreasonable, unless "good cause has appeared in the meantime to justify a continuation of the detention to pursue a different

5

investigation." *Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014). In denying the motion to suppress, the trial court found that the officer did not unreasonably lengthen the stop as he continued to investigate possible impairment of Douglas, the court citing Douglas' driving behavior and her red eyes as reasons for continuing the investigation. Crider argues that the search of Douglas' vehicle was conducted after the detention was illegally prolonged beyond the conclusion of the investigation that warranted the detention. He does not argue that the officer altogether lacked reasonable suspicion to investigate Douglas for DUI. Instead, Crider argues that, by the time the officer asked Douglas for permission to search her vehicle, the officer already had concluded that Douglas was not intoxicated to the point that she was less safe to drive.[2]

That assertion appears to be based on a police report in which, before stating that he asked for Crider's identification or sought Douglas' consent to search the vehicle, the officer said that he "checked [Douglas'] sobriety" and "determined that she was not under the influence of any intoxicating substance." But the police report does not recount events in chronological order. The officer testified, and the video

---

[2]Crider faults the arresting officer's reliance on the pair's nervousness in continuing the investigation. But the trial court made no factual findings on this point and did not rely on this factor, and so it does not play a part in our analysis, either.

6

recording confirms, that he asked for Crider's ID *before* performing field sobriety tests on Douglas. The officer testified that although the constricted pupils and redness in the eyes that he had observed in Douglas are indicative of someone being under the influence of a stimulant, his statement in the report was intended to convey that she did not appear to be intoxicated such that she could be charged with DUI. The trial court found that the officer continued his investigation of Douglas' possible impairment "as late as two minutes or so before the drugs were found," and the video shows that consent was requested and obtained about 90 seconds before the drugs were found.

The trial court's finding that the officer was still investigating was not clearly erroneous. Just before seeking Douglas' consent to search, the officer commented on her red eyes and asked her whether she had taken any drugs or used prescription medication, indicating he still had not resolved the question of whether she were intoxicated. As soon as Douglas responded that she had not taken any medication or drugs, the officer asked for consent to search. Thus, even if Douglas' responses to the officer's questions about drugs marked the end of his investigation into her possible impairment, the officer's contemporaneous request for her consent to search was permissible because it did not unreasonably prolong the detention. *See Hayes v. State*,

292 Ga. App. 724, 731 (2) (665 SE2d 422) (2008) ("virtually contemporaneous request" to search made 30 seconds after defendant issued warning ticket did not unreasonably prolong detention). Accordingly, Douglas' consent was valid, and the trial court did not err in denying the motion to suppress evidence found in the search of the vehicle.

(b) Crider also challenges the seizures made by police at a motel room, arguing that a search warrant was not obtained until after police searched the room. An overnight guest in a hotel room has a constitutionally-protected reasonable expectation of privacy in the room, and thus the Fourth Amendment provides the guest the same protection as he would have for his private home. *Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008). Police were led to the motel room by Douglas, who told them that, when she and Crider visited the motel room before setting out the night of the traffic stop, he had sold her the small amount of methamphetamine that police later found in her purse. She could not recall the room number, but rode with police to the motel to point out the room. Police obtained a search warrant for the room. There police found additional methamphetamine, smoking devices, and other items. On its face, the warrant indicates that it was issued at 4:31 a.m. on the morning after the traffic stop. However, the return on the warrant

8

says it was executed at 4 a.m. that same day, and a police property record appears to indicate that the contraband recovered at the hotel was obtained by 4:30 a.m.

Denying the motion to suppress, the trial court rejected Crider's attempt to argue that the warrant had not been obtained until after the motel room was searched. The trial court found that someone - the magistrate judge who signed the warrant, a police officer, or both - made a mistake in recording times, saying, "I don't know who made the mistake about the time and I don't really care." At trial, Douglas testified on cross-examination that when she went to the motel with the officers so that she could point out Crider's room for them, police entered the room. However, she also testified that she did not actually see them enter the room. Based on Douglas' testimony, Crider renewed his motion to suppress on the basis that she had testified that police had entered the motel room before getting a search warrant. The trial court rejected that argument, saying that although Douglas had been "confused" at various points in her testimony, she never testified that the officers entered the motel room prior to obtaining the search warrant.

The trial court's factual finding that the motel room was searched pursuant to a warrant is supported by evidence in the record. The officer who stopped Douglas and Crider testified that the officers did not enter the motel room when they went

9

there with Douglas, but only went in later after another officer obtained a search warrant. That other officer was not asked directly during the suppression hearing whether police obtained a warrant before entering the motel room, but he testified at trial that he did not enter the motel room when he went there with Douglas but subsequently obtained a search warrant. Although Douglas offered testimony that contradicted the police officers' testimony, her testimony was inconsistent, and she stated that she did not actually see the officers go into the room. It was for the trial court to resolve conflicts in the evidence. *See Perez*, 249 Ga. App. at 399-400. The trial court was authorized to accept the officers' testimony that they did not go into the motel room without a warrant. Accordingly, the trial court did not err in denying the motion to suppress evidence seized from the motel room.

2.      Crider argues that the evidence was insufficient to support his trafficking conviction, specifically arguing that there was insufficient evidence that he possessed the drugs found under the front passenger seat of the vehicle Douglas had been driving. When appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence or resolve conflicts in witness testimony" but instead defer "to the jury's assessment of the weight and credibility of the evidence." *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010) (citation omitted). We determine

10

whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (99 S. Ct. 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

Douglas testified that, prior to their encounter with police, she and Crider visited a hotel room where she purchased methamphetamine from him. Douglas saw Crider had additional methamphetamine, which she believed he left behind when they went out. As police were pulling them over, Crider attempted to place some additional drugs in her purse, but she refused. Douglas testified that she did not know what Crider did with those drugs but she had not put any methamphetamine under the passenger seat of her car.

At the time of the offense, OCGA § 16-13-31(e) provided that anyone who knowingly possessed 28 grams or more of methamphetamine committed the offense of trafficking.[3] The methamphetamine found under the front passenger seat in Douglas' car weighed 7.36 grams. At the motel room, unlocked with a key card found on Crider, police found 23.51 grams of methamphetamine, along with a toy gun,

---

[3] Crider was arrested on October 19, 2007 and tried in March 2010. Effective July 1, 2013, the Legislature deleted the word "knowingly" throughout the code section. Ga. L. 2013 p. 222, § 4.

11

multiple cell phones, glass pipes and a scale. As neither the amount of methamphetamine found in Douglas' vehicle nor the amount found in Crider's motel room by itself met the 28 gram threshold, Crider's trafficking required evidence showing that he possessed both the drugs found under his seat in the car and those found in the hotel room. On appeal, he argues that because there was insufficient corroboration of Douglas' testimony to the effect that the drugs found underneath the passenger seat of her car were Crider's, there is insufficient evidence that he possessed those drugs.

A person has constructive possession of a thing if he or she "knowingly has both the power and intention at a given time to exercise dominion or control over" it. *Smith v. State*, 331 Ga. App. 296, 297-98 (1) (771 SE2d 8) (2015) (citation and internal punctuation omitted). As long as there is "slight evidence of access, power, and intention to exercise control or dominion over the contraband," the question of whether the defendant constructively possessed contraband is one for the jury. *Id.* at 298 (1) n.6. "A finding of constructive possession of contraband cannot rest upon mere spatial proximity to the contraband, especially where . . . the contraband is hidden." *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997). A felony conviction cannot be based solely on the testimony of an accomplice, but only "slight

12

evidence from an extraneous source" is needed to corroborate the accomplice's testimony. *Grimes v. State*, 296 Ga. 337, 340 (1) (766 SE2d 72) (2014) (citing former OCGA § 24-4-8, found in the new Evidence Code at OCGA § 24-14-8). "The sufficiency of any corroborating evidence is for the trier of fact to decide." *Matthews v. State*, 284 Ga. 819, 820 (1) (672 SE2d 633) (2009) (citation omitted).

Here, Crider's trafficking conviction is not based on his mere spatial proximity to the contraband, but on Douglas' testimony that she had not put any methamphetamine under her passenger seat, that Crider had tried unsuccessfully to hide the drugs in her purse, and that Crider had sold her drugs from the motel room and had additional drugs there. That testimony was corroborated by more than slight evidence. Crider had more than $700 in cash on him, consistent with drug trafficking behavior. *See Hamilton v. State*, 293 Ga. App. 297, 299 (1) (a) (666 SE2d 630) (2008) ($494 found on defendant's person evidence of possession with intent to distribute drugs). He also had on his person a key to a motel room containing drugs, a scale, and multiple cell phones, which is consistent with drug trafficking. Thus, Douglas' testimony that drugs found under Crider's passenger seat belonged to him was sufficiently corroborated. The evidence authorized the jury to find Crider guilty of possession of methamphetamine with intent to distribute.

13

3.      Crider argues that his trial counsel was ineffective in his cross-examination of Douglas in two respects: (1) he unnecessarily and imprudently introduced evidence of Crider's prior bad acts; and (2) he failed to cross-examine Douglas adequately regarding the range of punishment that she potentially faced in the case.

In order to prevail on an ineffective assistance of counsel claim, Crider "must show that trial counsel's performance fell below a reasonable standard of conduct and that there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance." *Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (*citing Strickland v. Washington*, 466 U.S. 668 (104 S. Ct. 2052, 80 LE2d 674) (1984)). In reviewing a claim of ineffective assistance, the appellate courts give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but review a trial court's legal conclusions de novo. *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014) (citation omitted).

(a)      Crider's first claim of ineffectiveness stems from his trial counsel's introduction of a statement that Douglas gave to police about Crider. During his cross-examination of Douglas, trial counsel apparently attempted to show that

14

Douglas' statements to police changed over time. At one point, trial counsel elicited Douglas' admission that a written statement that she provided at 1:09 a.m. the night of the traffic stop did not mention drug transactions beyond saying that she had purchased from Crider $30 worth of methamphetamine found in her purse. Later, trial counsel successfully moved for the admission of a second written statement Douglas had provided to police, at 3 a.m. the same day.

On redirect examination, the State asked Douglas to read from several portions of her 3 a.m. statement. In the process, Douglas told the jury that she knew Crider was selling methamphetamine because she would take him to pick it up, and that Crider "never stopped" selling. On further cross-examination, Crider's trial counsel elicited Douglas' agreement that in her statement at the scene she said she did not "know anything about it," at 1:09 a.m. she said she had some knowledge but attempted to diminish her responsibility, and at 3 a.m. she "unload[ed] on Mr. Crider," making "all these other accusations against him."

The trial court denied the motion for new trial on the basis that trial counsel's introduction of prior drug transactions by Crider was part of a strategy to show that Douglas changed her version of events, limiting her own culpability while

incriminating Crider further as time went on.[4] We conclude that, regardless of

whether trial counsel's motion to admit the 3 a.m. statement constituted deficient

performance, any such deficiency did not prejudice Crider's defense. *See Gordon v.*

*State*, 273 Ga. 373, 377 (4) (541 SE2d 376) (2001) ("*Strickland* does not require that

we inquire first into the alleged deficiency in counsel's performance, or even address

it at all, if we find that no prejudice has been shown[.]") (citation and internal

punctuation omitted).

Crider argues on appeal that the introduction of the 3 a.m. statement was

prejudicial because the only evidence to support the conclusion that he possessed the

requisite amount of methamphetamine was the testimony of his accomplice and his

presence in the vehicle that she was driving, and the 3 a.m. statement opened the door

for the State to ask Douglas about Crider's prior drug dealing. However, as discussed

above, Douglas' testimony was corroborated by additional evidence. Moreover, to the

extent that the case turned on a challenge to Douglas' credibility, there is no

reasonable probability that the introduction of her statement would have made a

---

[4]As suggested by the timing of the introduction of the statement and testimony by trial counsel, the statement may also have been introduced as part of defense counsel's attempt to show that police entered the motel room before they obtained a search warrant.

16

difference in the outcome of the case. The statement essentially accused Crider of being a drug dealer. If the jury found Douglas credible, the statement would have been cumulative of her other testimony to that effect. If the jury did not find Douglas credible, the statement would not have mattered then, either, because in that case there is no reasonable probability that the jury would have credited Douglas' statements to the police implicating Crider. Therefore, we cannot say that "there existed a reasonable probability that the outcome of the case would have been different" had the 3 a.m. statement implicating Crider as a drug dealer not been introduced. *Scott*, 290 Ga. at 889 (7).

(b)     Crider next claims that his trial counsel was ineffective for failing to cross-examine Douglas adequately regarding the range of punishment that she potentially faced in the case. During her direct examination by the State, Douglas testified that she had been given first offender treatment. On cross-examination, Douglas acknowledged that she initially had been charged with possession with intent to distribute methamphetamine, but reached a plea deal with the State allowing her to plead guilty to a lesser offense in exchange for her testimony against Crider, resulting in a sentence of five years probation. Douglas testified that she could be resentenced to the maximum sentence for possession with intent to distribute

methamphetamine if she did not testify, in defense counsel's words, "like they want you to," but he did not ask her to specify that maximum sentence.[5] On redirect examination, Douglas clarified that her obligation under the terms of her plea agreement was to give truthful testimony. In denying the motion for new trial, the trial court found that trial counsel's cross-examination of Douglas was not deficient, saying Crider had failed to show what additional questions should have been asked.

"The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003) (footnote omitted). Crider essentially argues that trial counsel should have asked Douglas more probing questions about the sentences she faced in order to show her motive for testifying for the State. However, Douglas testified that she could be resentenced to the maximum sentence for possession with intent to distribute if she did not testify in the manner desired by the State, later clarifying that her obligation was to given truthful testimony. Because trial counsel elicited testimony from Douglas that she had substantial motivation to testify

[5]At the motion for new trial hearing, defense counsel testified that he had wanted to recall one of the officers who had testified for the State so that he could testify regarding "mandatory minimums and that sort of thing," as he would have been "more concise and precise" than Douglas. However, the trial court rejected defense counsel's request to recall the officer.

against Crider, we cannot say that trial counsel's decision not to delve further into the issue was unreasonable. *See Daugherty v. State*, 291 Ga. App. 541, 544 (3) (a) (662 SE2d 318) (2008); *see also Holder v. State*, 319 Ga. App. 239, 248-50 (3) (b) (736 SE2d 449) (2012) (rejecting ineffectiveness claim based on counsel's failure to ask State witnesses about the maximum possible sentences they avoided by making a deal with the prosecution). The cases cited by Crider on appeal address whether trial judges erred in limiting cross-examination of State witnesses, not claims of deficient performance by counsel in this regard.[6]

4.     Finally, Crider raises several arguments regarding jury instructions, including an additional ineffective assistance claim. In his written set of requested jury instructions, Crider asked for a pattern charge on equal access, which provides that if the jury determines "that persons other than the defendant had equal opportunity to possess or place the articles of contraband upon the described premises," the jury "should acquit the defendant, unless it is shown by a reasonable doubt that the defendant knowingly possessed the contraband or shared possession

---

[6]*See Manley v. State*, 287 Ga. 338, 339-46 (2)-(3), (5) (698 SE2d 301) (2010); *Howard v. State*, 286 Ga. 222, 224-26 (2) (686 SE2d 764) (2009); *State v. Vogelson*, 275 Ga. 637 (571 SE2d 752) (2002); *Hines v. State*, 249 Ga. 257, 259-60 (2) (290 SE2d 911) (1982).

or control with another person and helped or procured the other person in possessing and having control of the contraband." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2016), § 2.76.20. The trial court said it would not give the equal access charge with respect to Douglas' vehicle, as it was clear the State was not relying on a presumption that Crider possessed the drugs found there, given that Douglas was the driver and owner of the car.[7] The trial court ruled that it would not give an equal access charge as to the hotel room, either, because it had decided not to give a charge on presumption of possession and it would give the defense a "one-sided benefit" to charge on equal access only.

On appeal, Crider argues that the trial court erred by not giving the presumption of possession charge sua sponte and by not giving the requested equal access charge. He also argues that trial counsel was ineffective for failing to request the presumption of possession jury charge. Crider concedes on appeal that the trial court's decisions not to give the presumption of possession and equal access instructions are subject to only plain error review, given that trial counsel did not

_____

[7]Douglas told the arresting officer that the car was in her father's name, but the officer testified that he determined the car belonged to her.

specify his objection to the charges pursuant to OCGA § 17-8-58(a). *See* OCGA § 17-8-58(b).

Georgia law establishes a rebuttable presumption that the owner or driver of a vehicle has possession of contraband found in the automobile. *See Reyes v. State*, 322 Ga. App. 496, 499 (3) (745 SE2d 738) (2013). This presumption applies to the owner or resident of a premises, as well. *See Kirchner v. State*, 322 Ga. App. 275, 282 (1) (c) (744 SE2d 802) (2013). Our Supreme Court has held that "[e]qual access is merely a defense available to the accused to whom a presumption of possession flows." *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006). When the trial court elects not to charge the jury on the presumption of possession, an equal access instruction is not required. *See id.; Kan v. State*, 199 Ga. App. 170, 171 (3) (404 SE2d 281) (1991).

Here, the trial court elected not to charge the jury on the presumption of possession, and thus there was no need to instruct the jury on how equal access to the contraband in question might rebut any such presumption. Of course, the State did not rely on any presumption of possession to show that Crider possessed the contraband found under the seat of the vehicle, as there was no evidence that he either owned or was driving the vehicle. As for the motel room, the State did not rely solely on a

21

presumption that Crider possessed whatever was in the motel room that he had rented, but instead presented Douglas' testimony that he sold and consumed drugs out of the room. The trial court did not commit error, let alone plain error, in declining to charge on presumption of possession or equal access.

The trial court also did not err in finding that trial counsel's failure to request the presumption of possession charge constituted deficient performance. Although a presumption of possession charge might have helped Crider defend against the allegation that the drugs found in the car were not his, such a charge might also have hurt his defense as to the drugs found in the motel room. *See Scott v. State*, 298 Ga. App. 376, 381 (4) (b) (680 SE2d 582) (2009) (not ineffective to fail to request presumption of possession charge, since that could have operated to defendant's detriment). And, at any rate, as it is clear from the transcript that the trial court entertained the notion of instructing the jury on the presumption of possession. In deciding not to do that, the trial court did not reference any lack of a request on the part of Crider's counsel. The trial court did not err in rejecting Crider's ineffectiveness claim based on his trial counsel's failure to request a presumption of possession instruction.

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.