**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1123. LINDSEY v. THE STATE.

REESE, Judge.

A jury found Phillip Ray Lindsey, Jr. (the "Appellant"), guilty of possession of methamphetamine with intent to distribute, possession of less than one ounce of marijuana, two counts of possession of a firearm during the commission of a felony, and three counts of possession of drug related objects.[1] The Appellant appeals from the trial court's denial of his motion for new trial, arguing that the trial court erred in denying his motion to suppress evidence and motion to exclude statements that he made to law enforcement officers, and that the court erred in instructing the jury. For the reasons set forth infra, we affirm.

---

[1] OCGA §§ 16-13-30 (b); 16-13-30 (j); 16-11-106; 16-13-32.2. The trial court merged a guilty verdict on one count of possession of methamphetamine, OCGA § 16-13-30 (a), into the possession with intent conviction for purposes of sentencing.

Viewed in the light most favorable to the trial court's ruling on the motions to suppress evidence,[2] the evidence showed the following facts. At about 10:00 a.m. on November 8, 2016, Lieutenant Jason Sullivan and Detective Alan Miles of the Catoosa County Sheriff's Office's narcotics division received a request for assistance with an arrest from Detective Scott Murray of the Dalton Police Department. Det. Murray told the officers that his department had an outstanding arrest warrant for the Appellant based on a felony probation violation,[3] and Det. Murray had learned from a reliable confidential source that the Appellant currently had drugs in his possession and was staying with a woman named "Raeanna Higginbotham" in Room 201 of a certain motel in Ringgold.

Lt. Sullivan and Det. Miles met with Det. Murray, then went to the motel's front office, where a motel clerk confirmed that Higginbotham had rented Room 201. According to the clerk, the Appellant was in Room 201 with Higginbotham, and, because Higginbotham had not renewed the room rental for another night, they both

---

[2] See *Dowd v. State*, 280 Ga. App. 563, 565 (2) (634 SE2d 509) (2006) ("In reviewing a trial court's ruling on a motion to suppress, the evidence is . . . construed most favorably to uphold the findings and judgment of the trial court.").

[3] Lt. Sullivan testified that he verified that the Appellant had an outstanding probation violation warrant by contacting the Catoosa County 911 and the probation officer, Justin Harris.

had to be out of the room by 11:00 a.m. that day. The clerk told Lt. Sullivan that the motel's normal protocol was "to give the room occupants [until] the allotted time, which is eleven a.m., to either come check out or call and re-[rent] the room for another night." Then, if the occupants had not contacted the motel's clerk or rented the room for another night by 11:00 a.m., the staff would go up to the room and check to see if the occupants were still in the room.

At 11:00 a.m., neither Higginbotham nor the Appellant had contacted the clerk or rented the room for another night. Thus, a motel employee, accompanied by Det. Murray, Lt. Sullivan, Det. Miles, Probation Officer Justin Harris, and other law enforcement officers, went to Room 201. The motel employee knocked on the door several times, but did not receive a response. As a result, the motel employee announced who he was and started to open the door with the motel's master key. However, a woman (who was later identified as Higginbotham) partially opened the door from the inside, with the top latch still engaged. Through the door, the officers could see inside the room and saw a man jump off the left side of the bed and appear as though he was going to "take off[ ]" or try to hide. When Higginbotham saw the law enforcement officers, she tried to shut the door to keep them out, but one of the officers shoved the door open. Probation Officer Harris recognized the Appellant as

3

the person for whom the department had an outstanding probation violation arrest warrant and advised the Appellant about the warrant. An officer searched the Appellant but did not find any weapons or contraband on his person.

According to Lt. Sullivan, while Room 201's door was open, he saw, in plain view, a "clear crystal[-]like substance" and drug related items on a table on the left side of the bed. Lt. Sullivan testified that, based on his four to five years of experience in the narcotics division of the sheriff's office, the crystal-like substance had the "consistency and appearance of methamphetamine[.]" Lt. Sullivan also testified that the drug related items that he observed on the table included a glass smoking device that contained a residue that was consistent with methamphetamine. In addition, in plain view on a table on the other side of the bed, Lt. Sullivan observed a small glass jar containing a "green leafy substance" and two small bags of a "brown, crystal type substance[,]" which Lt. Sullivan believed to be marijuana and methamphetamine. Based on his observation of this contraband in plain view, Lt. Sullivan secured Room 201 until a search warrant could be obtained. Because the room was small, with only the bed and one chair on which the Appellant, Higginbotham, and the officers could sit while waiting for the search warrant, the

4

officers checked the bed for safety and found a .22 caliber handgun between the mattress and box spring.[4]

After Det. Miles obtained a search warrant and the officers conducted the search, they placed the Appellant and Higginbotham under arrest. Lt. Sullivan testified that he advised the Appellant of his *Miranda*[5] rights, and the Appellant voluntarily agreed to speak with him and give a statement.[6] Lt. Sullivan denied that he had made any threats or promises or otherwise coerced the Appellant in order to get the Appellant to waive his rights.

---

[4] See OCGA § 17-5-1 (a) ("When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of: (1) Protecting the officer from attack; (2) Preventing the person from escaping; (3) Discovering or seizing the fruits of the crime for which the person has been arrested; or (4) Discovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested."), (b) ("When the peace officer is in the process of effecting a lawful search, nothing in this Code section shall be construed to preclude him from discovering or seizing any stolen or embezzled property, any item, substance, object, thing, or matter, the possession of which is unlawful, or any item, substance, object, thing, or matter, other than the private papers of any person, which is tangible evidence of the commission of a crime against the laws of this state.").

[5] See *Miranda v. Arizona*, 384 U. S. 436, 478-479 (III) (86 SCt 1602, 16 LE2d 694) (1966).

[6] This was the only time the Appellant spoke with Lt. Sullivan, and the statements, which were not recorded, are the ones at issue in Divisions 2 and 3, infra.

According to Lt. Sullivan, the Appellant admitted that "he was involved with methamphetamine and he had been dealing with methamphetamine and that he was also expecting [a man named Jason Meeks] to make a delivery that day" of an "eight ball of methamphetamine." While officers were present, the Appellant spoke to Meeks on the phone, and Meeks said that he was on his way to the motel. Shortly thereafter, Meeks did, in fact, arrive at the motel in a truck that matched the description he had given to the Appellant, which he parked in a space near Room 201. The officers detained Meeks after he knocked on the door of Room 201.

The Appellant's appointed counsel filed a motion to suppress the evidence seized from Room 201 and a motion in limine to suppress the statements the Appellant had made to Lt. Sullivan. Following a hearing, the trial court denied the motion to suppress. And, immediately before trial, the court conducted a *Jackson-Denno*[7] hearing on the admissibility of the Appellant's custodial statements before denying the motion in limine based on a finding that the Appellant had voluntarily made the statements.

---

[7] See *Jackson v. Denno*, 378 U. S. 368, 394-395 (IV) (84 SCt 1774, 12 LE2d 908) (1964).

At trial, the jury found the Appellant guilty of numerous drug offenses, as shown above. After conducting a hearing, the trial court denied the Appellant's motion for new trial. This appeal followed.

> When reviewing a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the trial court's findings and judgment and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Nevertheless, when the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.[8]

With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the trial court erred in denying his motion to suppress evidence that law enforcement officers seized, allegedly in violation of his Fourth Amendment protections against illegal searches and seizures. The Appellant argues that he had stayed in Room 201 overnight and, thus, had a reasonable

---

[8] *State v. Delvechio*, 301 Ga. App. 560, 561-562 (687 SE2d 845) (2009).

expectation of privacy that was violated when the officers illegally entered the room without a warrant, probable cause, or consent. We disagree.

The Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy. The Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable.[9]

(a) "[A] hotel guest has a reasonable expectation of privacy in his room if certain factors are present,"[10] such as if the guest properly checked into and paid for the room.[11] In contrast, "mere unlawful possession of a [motel] room does not warrant a reasonable expectation of freedom from governmental intrusion[.]"[12] Thus, the question presented is whether, at the time the motel employee allowed the officers to

---

[9] *Delvechio*, 301 Ga. App. at 562 (citation and punctuation omitted).

[10] *Johnson v. State*, 285 Ga. 571, 573 (679 SE2d 340) (2009).

[11] Id. at 573, n. 5.

[12] *Delvechio*, 301 Ga. App. at 562 (citations and punctuation omitted).

8

enter Room 201, the Appellant was a "guest" of the motel that entitled him to a reasonable expectation of privacy and gave him standing to contest the officers' entry and the seizure of evidence that followed.[13]

OCGA § 43-21-1 (1) defines the term "guest" as "a person who pays a fee to the keeper of an inn for the purpose of entertainment at that inn." Under OCGA § 43-21-3.2,

> [a] written statement prominently setting forth in bold type the time period during which a guest may occupy an assigned room, when separately signed or initialed by the guest, is a valid nonassignable contract. At the expiration of such time period, the guest may be restrained from entering such room and any property of the guest may be removed by the innkeeper to a secure place where the guest may recover his or her property without liability to the innkeeper, except for damages to or loss of such property attributable to its removal.

In this case, the motel's registration form that shows Higginbotham's payment for Room 201 stated, in bold text near her signature, "**Check-in time: 3:00 PM**" and "**Check-out time: 11:00 AM**[.]" Thus, pretermitting whether the Appellant was ever a "guest" of the motel under OCGA § 43-21-1 (1), under the plain terms of the

---

[13] See *Delvechio*, 301 Ga. App. at 562.

registration contract, neither the Appellant nor Higginbotham was a "guest" after 11:00 a.m. on November 8, 2016, due to their failure to pay for another night's stay.[14]

At that point, control over Room 201 reverted back to the motel,[15] and the motel was within its rights to evict the Appellant and Higginbotham from Room 201 without notice.[16] It follows, therefore, that the Appellant had no legal possession or control of Room 201 after 11:00 a.m. on November 8, 2016, so any expectation of

---

[14] See *Delvechio*, 301 Ga. App. at 562-563 (holding that, because the defendants obtained a hotel room by fraudulently using another person's credit card, they were never "guests" of the hotel within the meaning of OCGA § 43-21-1 (1)); see also *Jordan v. Marriott Intl.*, 346 Ga. App. 706, 710 (1) (a) (816 SE2d 822) (2018) (physical precedent only) (Under OCGA § 43-21-3.2, "a person's status as a guest at the hotel terminates at the expiration of the time period agreed to by the parties and 'signed or initialed by the guest.'").

[15] See *Johnson*, 285 Ga. at 574, citing *Young v. Harrison*, 284 F3d 863, 868-869 (8th Cir. 2002).

[16] See OCGA § 43-21-3.1 (a) ("Whenever the keeper of a hotel, apartment hotel, boarding house, inn, or other accommodations furnished on a day-to-day or weekly basis wishes to terminate the occupancy of a guest *for reasons other than those described in subsection (b) of this Code section*, the keeper shall give notice of such intention to the guest.") (emphasis supplied), (b) ("The notice requirement of subsection (a) of this Code section shall not apply to a termination of occupancy for cause, such as *failure to pay sums due*, failure to abide by rules of occupancy, *failure to have or maintain reservations*, or other action by a guest.") (emphasis supplied); see also *Johnson*, 285 Ga. at 574; *Delvechio*, 301 Ga. App. at 563.

10

privacy he may have claimed prior to that time had terminated[17] and he had no standing to contest the officers' entry into and search of the room.[18]

Viewing the evidence in the light most favorable to upholding the trial court's judgment,[19] we hold that the officers entered Room 201 after 11:00 a.m. on November 8, 2016, when the Appellant was not a "guest" of the motel and, thus, had no reasonable expectation of privacy in the room.[20] Consequently, the officers legally entered the room and did not violate the Appellant's Fourth Amendment rights.

Further, because the officers observed contraband in plain view once they were inside the room, they were authorized to seize that contraband, and it was admissible at trial.[21]

---

[17] See *Johnson*, 285 Ga. at 573 ("[A] justifiable eviction terminates a hotel occupant's reasonable expectation of privacy in the room.") (punctuation and footnote omitted); *Delvechio*, 301 Ga. App. at 562.

[18] See *Delvechio*, 301 Ga. App. at 562 (holding that the determination of whether the defendants had standing to contest the search of their hotel room depended on whether they had a reasonable expectation of privacy in the room).

[19] See *Delvechio*, 301 Ga. App. at 561-562.

[20] See *Johnson*, 285 Ga. at 573.

[21] See *State v. Venzen*, 286 Ga. App. 597, 599-600 (2) (649 SE2d 851) (2007) ("It is well settled that[,] if a police officer has a right to be in the position from which an object is seen lying in plain view, the object is admissible as evidence.") (citations and punctuation omitted).

Consequently, the trial court did not err in denying the Appellant's motion to suppress the evidence seized from Room 201 of the motel.

(b) Given this ruling, the Appellant's remaining arguments challenging the legality of the officers' entry into Room 201 are moot. Further, to the extent the Appellant contends that the motel employee was not authorized to allow anyone, including police officers, into Room 201 for any reason, he failed to raise that argument in the trial court. Thus, it was waived.[22]

2. The Appellant contends that the trial court erred in denying his motion to exclude statements that he made to Lt. Sullivan,[23] arguing that the statements were the fruit of an illegal entry into Room 201 that violated his Fourth Amendment rights. Specifically, he argues that the officers' "[i]llegal entry into the room led to the detention of [the Appellant], which, in turn led to his confession. Without entering

---

[22] See *Rogers v. State*, 298 Ga. App. 895, 903 (6) (681 SE2d 693) (2009) ("Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court.") (citations and punctuation omitted); *Williams v. State*, 277 Ga. App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined by the trial court.").

[23] See Division 3, infra, regarding the content of the statements at issue.

the room illegally to find [the Appellant], law enforcement [officers] could not have detained [the Appellant] and subjected him to the questioning." Given our ruling in Division 1, supra, however, the Appellant cannot prevail on this alleged error.

3. The Appellant also argues that the trial court should have suppressed the incriminating statements he made to Lt. Sullivan while in custody in Room 201, arguing that he gave the statements "under the duress of illegal police activity" and that they were obtained in violation of his Fifth Amendment right to remain silent.

"[I]ncriminating statements are admissible against the accused at trial only if they are voluntary, and the State has the burden of proving voluntariness by a preponderance of the evidence."[24]

> In deciding the admissibility of a statement during a *Jackson-Denno* hearing, the trial court must consider the totality of the circumstances. . . . After the trial court determines that the State has met its burden of demonstrating that a defendant's statement was freely and voluntarily

---

[24] *Barrett v. State*, 289 Ga. 197, 199 (1) (709 SE2d 816) (2011). See *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015) ("Under Georgia statutory law, '[t]o make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury.' OCGA § 24-8-824. This provision of Georgia's new Evidence Code tracks the language of OCGA § 24-3-50 of the old Code. Although the statute uses the term 'confession,' it has long been the law in this State that the rule as to the admissibility of an incriminatory statement is the same as that applied to a full confession.") (citation and punctuation omitted).

given in compliance with *Jackson v. Denno*, it may permit the statement to come into evidence. On appeal, this Court will not disturb the trial court's factual findings and credibility determinations unless they are clearly erroneous.[25]

During the *Jackson-Denno* hearing in this case, Lt. Sullivan testified that, after he advised the Appellant of his *Miranda* rights, the Appellant stated

> that he had been at the motel for a couple of days prior[ and that] he had had some people in and out [of Room 201] during this time and some of the people may or may not have had, was his words, narcotics on [them]. There were some, he said, Hispanic folks that had been in and out, that he described them as being tattooed up. They had been in and out of the room. And he had stated . . . that he could have some narcotics, methamphetamines delivered to that room while [the officers] were present.

Following the hearing, the trial court found that the evidence clearly showed that the Appellant was in custody and had been "properly *Mirandized*[ ]" at the time he made the statements and that he had made the statements voluntarily. The court also found that the Appellant had spontaneously volunteered to assist the police by having someone else (i.e., Meeks) bring drugs to the room and that the offer ("offer of

---

[25] *Steele v. State*, 337 Ga. App. 562, 563 (1) (788 SE2d 145) (2016) (citations and punctuation omitted).

14

assistance") had not been induced by the police, nor was it the product of police coercion. The court also noted that the Appellant had been arrested and "been through the process" before, which indicated the Appellant's "familiarity with the system and lack of coercion[ ]" by the police. Thus, the court ruled that the Appellant's incriminating statements to Lt. Sullivan were admissible at trial.

(a) As an initial matter, the basis for the Appellant's argument regarding the "duress of illegal police activity" is his allegation that the officers illegally entered Room 201 before placing him in custody. For the reasons given in Division 1, supra, this argument lacks merit.

(b) The Appellant argues that the evidence presented during the *Jackson-Denno* hearing was neither clear nor credible on the issue of whether his offer of assistance had been induced by promises made by Lt. Sullivan or other officers. Specifically, the Appellant contends that the evidence did not exclude the possibility that Lt. Sullivan had promised to delay the Appellant's arrest in exchange for his assistance.

During the *Jackson-Denno* hearing, however, Lt. Sullivan specifically testified that he did not discuss anything with the Appellant about assisting in drug investigations or delaying the Appellant's arrest until *after* the Appellant had made

the incriminating statements, including his offer of assistance. Lt. Sullivan also testified that he did not make any threats or promises to the Appellant or otherwise coerce him in order to get him to waive his constitutional rights. The Appellant did not testify during the *Jackson-Denno* hearing, nor did he present any evidence to contradict Lt. Sullivan's testimony.

Further, the evidence showed that the Appellant made his offer of assistance spontaneously, i.e., the offer was not made in response to a statement or question by Lt. Sullivan. Thus, even if the Appellant made the offer of assistance because *he hoped* that Lt. Sullivan might be more lenient with him as a result, that did not render the offer inadmissible, because the hope had not been *induced* by Lt. Sullivan.[26] In addition,

---

[26] See *Dunson v. State*, 309 Ga. App. 484, 489 (2) (b) (711 SE2d 53) (2011) (physical precedent only) (To require the exclusion of a confession, "the 'hope of benefit' must be induced by another. A hope that originates in the mind of the person making the confession and which originates from seeds of his own planting will not exclude a confession.") (decided under former OCGA § 24-3-50) (citations and punctuation omitted); *Ramos v. State*, 198 Ga. App. 65, 66 (1) (400 SE2d 353) (1990) (finding that the defendant's inculpatory statement was admissible under former OCGA § 24-3-50, where the evidence showed that the defendant made the statement spontaneously in the hope that the police would not press charges, and not in response to any promises made to him); see also *Chulpayev*, 296 Ga. at 771 (2).

16

[a] statement which is spontaneous and unsolicited as not made in response to any form of custodial interrogation is not bound by the strictures of *Miranda* and is admissible without the warnings having been given. The issue of whether a statement was the result of an interrogation or was instead volunteered is a determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous.[27]

Although the Appellant attacks the credibility of Lt. Sullivan's testimony on this issue, arguing that, despite the officer's uncontradicted testimony, Lt. Sullivan "could have promised [the Appellant] the benefit of delayed arrest in return for his confession[,]" decisions as to witness credibility and findings on disputed facts are determinations to be made solely by the trial court.[28]

Here, the record supports the trial court's conclusion that the Appellant's statements were voluntary.[29] Consequently, the trial court did not err in ruling that the statements were admissible and in denying the Appellant's motion in limine to exclude the statements.

---

[27] *Barrett*, 289 Ga. at 199 (1).

[28] See *Delvechio*, 301 Ga. App. at 561-562.

[29] See *Steele*, 337 Ga. App. at 563 (1); see also *Chulpayev*, 296 Ga. at 771 (2); *Barrett*, 289 Ga. at 199 (1).

4. The Appellant contends that the trial court erred in denying his request that it instruct the jury on equal access. We disagree.

"A requested jury charge must be legal, apt and precisely adjusted to some principle involved in the case and be authorized by the evidence. A requested charge should be delivered if it is a correct statement of law that is pertinent and material to an issue in the case and not substantially covered by the charge actually given."[30]

Georgia law establishes a rebuttable presumption that the owner or resident of a premises has exclusive possession of contraband found inside.[31] "[E]qual access is

---

[30] *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006) (citations and punctuation omitted).

[31] See *Clewis v. State*, 293 Ga. App. 412, 414 (2) (667 SE2d 158) (2008) ("If the State presents evidence that a defendant owned or controlled premises where contraband was found, it gives rise to a rebuttable presumption that the defendant possessed the contraband.") (citation and punctuation omitted); see also *Crider v. State*, 336 Ga. App. 83, 93 (4) (783 SE2d 682) (2016) (holding that the presumption of possession could be applied to a hotel room rented by the defendant); *Kirchner v. State*, 322 Ga. App. 275, 282 (1) (c) (744 SE2d 802) (2013) (holding that the State established the presumption that the owner and resident of the house possessed the drugs found inside); see generally *Thompson v. State*, 234 Ga. App. 74, 77 (3) (506 SE2d 201) (1998) ("The equal access rule, as it applies in the automobile context, is merely that evidence showing that a person or persons other than the owner or driver of the automobile had equal access to contraband found in the automobile [and may], depending upon the strength of the evidence, overcome the presumption that the contraband was in the exclusive possession of the owner or driver.") (citations and punctuation omitted).

18

merely a defense available to the accused to whom a presumption of possession flows. When the trial court elects not to charge the jury on the presumption of possession, an equal access instruction is not required."[32] Likewise, "if the [S]tate does not rely on . . . a presumption of possession [to prove the defendant's exclusive possession of the contraband], there is no triggering of the equal access defense."[33]

The Appellant submitted written requests for jury instructions prior to trial, including the following instructions on equal access and presumption of possession, respectively:

> If you determine from the evidence that persons other than the defendant had equal opportunity to possess or to place the articles of contraband upon the described premises, then, and in that event, you should acquit the defendant, unless it is shown beyond a reasonable doubt that the defendant knowingly possessed the contraband or shared possession or control with another person and helped or procured the other person in possessing and having control of the contraband.

> If you find that a person owns or is the lessee of a premises, you will be permitted, but not required, to infer that such person is in possession of the entire premises and all of the property located on or in the premises. However, this is a rebuttable inference and may be

---

[32] *Crider*, 336 Ga. App. at 93 (4) (citations and punctuation omitted).

[33] *Wiggins v. State*, 258 Ga. App. 703, 705 (2) (574 SE2d 896) (2002).

19

overcome by evidence in the case that others had access to the premises. Whether or not this inference is drawn from proof that a person is the lessee of a premises and whether or not the inference has been overcome by proof that others had access to the premises are questions for the jury alone. I further charge you in that connection that if you find that the premises were used by others, with the defendant, such evidence would not alone authorize a conviction. However, such a fact, if it is a fact, should be considered by you, the jury, together with all of the evidence in the case in passing upon the guilt or innocence of the defendant."

During the charge conference in this case, the Appellant argued that he was entitled to a presumption of possession jury instruction because he had stayed in Room 201 for two nights and, thus, was "essentially in possession of that room[ ]" at the time the officers entered on November 8, 2016. He also argued that, because other people had entered the room during that time who could have placed the contraband in the room, he was entitled to an equal access jury instruction, adding that equal access was his sole defense. In response, the State argued that there was no evidence to show that the Appellant was in legal possession of Room 201 at the time of the officers' entry so as to authorize a presumption of possession that he also possessed the contraband therein. Absent such a presumption, the Appellant was not entitled to

an equal access jury instruction as a matter of law.[34] Based on these arguments, the trial court denied the Appellant's requests for these charges.

Although the Appellant's counsel objected to the denial of his written requests to charge after the court instructed the jury, the Appellant does not raise the court's failure to give the presumption of possession charge on appeal. Instead, the Appellant only claims that he was entitled to an equal access charge.

Given that the Appellant was not named on the motel's registration form as either the renter or a guest of Room 201, the State did not rely on a presumption of possession of the room to prove that the Appellant possessed the contraband; instead, it presented other evidence to prove its case, as shown above.[35] Further, because the trial court did not charge the jury on presumption of possession, there was no presumption for an equal access charge to rebut.[36]

---

[34] See *Johnson*, 280 Ga. at 513.

[35] See *Clewis*, 293 Ga. App. at 415 (2) ("[T]he equal access doctrine applies to rebut the presumption of possession only where the *sole* evidence of possession of contraband found on the premises is the defendant's ownership or possession of the premises.") (emphasis in original).

[36] See *Crider*, 336 Ga. App. at 93 (4) (Because "the trial court elected not to charge the jury on the presumption of possession, . . . there was no need to instruct the jury on how equal access to the contraband in question might rebut any such presumption.").

21

Further, as to the Appellant's argument that the trial court was required to charge the jury on equal access because that was his sole defense,

> the determination of whether a legal concept is a defendant's sole defense most properly relates to whether a trial court must sua sponte instruct the jury on the defense. When, as in this case, a request for a jury instruction is submitted to the court, the preliminary question must be whether the requested charge is appropriate.[37]

As discussed above, because the jury in this case was not presented with a presumption of possession to consider when deciding the Appellant's guilt, equal access was not a defense that was available to the Appellant, let alone his sole defense.[38]

Finally, the Appellant contends that "the trial court's [jury] instructions on constructive and joint possession [of the contraband] led to a presumption of possession," which entitled him to an instruction on equal access because, "[i]n this context, 'constructive' is synonymous with 'presumptive.'"[39] The Appellant,

---

[37] *Johnson*, 280 Ga. at 513, n. 3.

[38] See *Crider*, 336 Ga. App. at 92-93 (4); *Wiggins*, 258 Ga. App. at 705 (2).

[39] But see *Thompson*, 234 Ga. App. at 77 (3) (holding that the trial court did not err in refusing to give a jury instruction on equal access when the evidence did not reasonably raise the issue but, instead, raised only the issue of joint possession).

however, has failed to cite to any authority for this argument,[40] nor did he raise it in the trial court.[41] Consequently, this argument presents nothing for this Court to review.

Under these circumstances, the trial court did not err in refusing the Appellant's request for a jury instruction on equal access.[42]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[40] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[41] See *Rogers*, 298 Ga. App. at 903 (6); *Williams*, 277 Ga. App. at 108 (2).

[42] See *Crider*, 336 Ga. App. at 93 (4).